MARTIN ROTHBARTH and Others, Respondents, *v.* FELIX HERZFELD and Others, Appellants.

First Department, November 9, 1917.

Aliens — right of alien enemy to prosecute action during war — summary power of court to halt action — effect of assignment of cause of action by aliens prior to commencement of war — rights of American creditors.

An alien enemy, resident in the enemy's country, cannot during the war prosecute an action in our courts.

The court may, by a summary order, suspend the further prosecution of such an action in our courts, upon it being established by affidavit or otherwise that an action is being so prosecuted, but the complaint should not be dismissed as the disability of the plaintiff is temporary in its nature.

The fact that the alien enemies assigned the cause of action to American citizens prior to the outbreak of the war is not a defense to a motion to halt the action, where it appears that the assignees or trustees would be required to distribute the bulk of the proceeds of the judgment to the alien enemies after paying two American creditors.

The mere fact that the interests of two American creditors may be prejudiced by halting the prosecution of the action during the war does not justify the court in failing to enforce the settled and established law.

APPEAL by the defendants, Felix Herzfeld and others, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of

New York on the 5th day of July, 1917, denying their motion for judgment dismissing the complaint and for other relief.

*William N. Cohen,* for the appellants.

*George H. Engelhard,* for the respondents.

Shearn, J.:

The law is well settled that an alien enemy, resident in the enemy's country, cannot during the war prosecute an action in our courts. (*Jackson* v. *Decker,* 11 Johns. 418; *Bell* v. *Chapman,* 10 id. 183; *Sanderson* v. *Morgan,* 39 N. Y. 231; *Kershaw* v. *Kelsey,* 100 Mass. 561.) The situation disclosed in the case at bar, however, is peculiar. The action, which is one in equity for an accounting of moneys embezzled by plaintiffs' agent and paid over by him to the defendants for his individual stock speculations, was commenced in 1910. The plaintiffs are copartners and sue as such. Two of the three plaintiffs are subjects of the German Empire, resident therein at the commencement of the action and now, and they are, therefore, non-resident alien enemies. The third plaintiff was born a subject of the German Empire and although apparently a resident of the city of London, Eng., sued herein as a member of the German partnership. The case went to trial in January, 1913, before the Hon. Charles F. Brown, as referee. Both sides rested their case in April, 1916, and the decision has been delayed pending the submission of briefs. On April 18, 1917, the defendants appeared before the referee and made a motion to dismiss the complaint upon the ground that the plaintiffs are alien enemies. In opposition to the motion it was shown that in 1910 the plaintiffs had assigned their cause of action to two members of the New York bar, as trustees, for the benefit of four creditors of the plaintiffs, and that two of those creditors were national banks in the city of New York, to wit, the Liberty National Bank and the Mercantile National Bank. The referee thereupon refused to dismiss the complaint, stating that he would consider the entire case and that if he should decide the merits in favor of the plaintiffs he would then make such disposition as the international situation might require and with as little impairment as possible of the interests of our own citizens inter-

ested in the claim. After this disposition of the motion by the referee the defendants on May 25, 1917, served a notice of withdrawal of their motion to dismiss. Then on June 4, 1917, the defendants applied to the Special Term for leave to file and serve a supplemental answer alleging the facts showing that the plaintiffs are alien enemies. The plaintiffs consented thereto and an order was submitted to the court for signature on June 16, 1917. Before the order was signed the defendants moved in Special Term, but before another justice, to dismiss the complaint on the ground of the alien enemy status of the plaintiffs. The motion was denied upon the ground that the defense of alien enemy is one to be set up by answer and that the issues should be tried as other issues are tried and not be disposed of summarily on affidavits. We are of the opinion that the learned justice at Special Term erred in holding that the only way in which an alien enemy can be halted in the prosecution of an action in our courts is to have the issue presented by a pleading and determined upon a trial in the same manner as all other issues are tried. The court has and should at all times maintain complete and effective control over all proceedings pending therein. It is inconceivable that our courts would permit a German subject, resident in Germany, to prosecute an action in our courts during the war. Indeed, the Trading with the Enemy Act, approved October 6, 1917, recognizing the settled rule against permitting alien enemies to prosecute suits in our courts during the war, carefully provides in dealing with certain exceptions (40 U. S. Stat. at Large, 417, § 7, subd. b) that " Nothing in this act shall be deemed to authorize the prosecution of any suit or action at law or in equity in any court within the United States by an enemy or ally of enemy prior to the end of the war, except as provided in section ten hereof." Section 10, referred to, merely permits the maintenance of suits after the end of the war by the owner of patents, trade marks, etc., permitted to be applied for by an enemy or ally of enemy during the war. (Id. 420, § 10.) It is the plain duty of every court in the United States to enforce this rule of law and to aid the government in seeing that the Trading with the Enemy Act is firmly upheld. If the roundabout procedure of requiring the question to be raised by supplemental answer

and disposed of upon a trial which might take place a year or two later were relied upon, the power of the court to control proceedings pending before it would be paralyzed. It is entirely competent for the court to act summarily in such a case and suspend the further prosecution of an action upon its being established to its satisfaction by affidavit or otherwise that the action is being prosecuted by an alien enemy. The learned justice at Special Term, therefore, erred in placing his refusal to suspend the further prosecution of the action upon the ground assigned. The court was right, however, in refusing to dismiss the complaint, as the disability of the plaintiffs is but temporary in its nature. (*Jackson* v. *Decker,* *supra.*)

It is urged that this case presents unusual circumstances which should lead to an affirmance of the order appealed from in that the alien enemy plaintiffs are only nominal plaintiffs, who long before the outbreak of the war, in good faith, assigned their cause of action to American citizens, and it is suggested that the assignees would be entitled to an order substituting themselves as plaintiffs on applying therefor, and, consequently, as they would in that event be entitled to prosecute the action to judgment, the order should stand, particularly in view of the fact that the first proceeds of the judgment are required to be paid to American citizens. On examining the assignment, however, it does not appear that the alien enemies are only nominal plaintiffs or that the assignees would be entitled to substitution, for the instrument recites that it is " expressly understood and agreed that the [said trustees] shall have no voice in the conduct or settlement of said suits or claims and, in fact, that their powers and duties shall be strictly limited to a distribution of any moneys they may receive as such trustees in accordance with the terms of said agreement." It further appears that these assignees or trustees would be required to distribute the bulk of the proceeds of the judgment, after paying the two American creditors, to alien enemies. Therefore, the suit is not only being prosecuted by alien enemies but, in large part, for the benefit of alien enemies. The mere fact that the interests of the American banks may be prejudiced by halting the prosecution of the case during the war (even if the banks

raised such a claim, which they do not) would not justify the court in failing to enforce the settled and established law. The rule in question has its origin in the law of nations; it is for the benefit of the nation, designed to assist the nation in a successful prosecution of the war and cannot be modified in the interest of individual citizens who happen to be affected. Since the motion was made a custodian of alien enemy property has been appointed by the President under the Trading with the Enemy Act. Upon the situation being called to his attention, that official may intervene, take over and continue the prosecution of the action, but it certainly cannot be further prosecuted by or in the interest of these plaintiffs.

The order should be reversed, with ten dollars costs and disbursements, and the motion to suspend the further prosecution of the action by the plaintiffs during the continuance of the war granted, with ten dollars costs.

CLARKE, P. J., SCOTT, SMITH and DAVIS, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and motion granted to extent stated in opinion.