W. WEIDITSCHKA, Administrator, Appellee, v. SUPREME TENT
KNIGHTS OF MACCABEES OF THE WORLD, Appellant.

INSURANCE:  What Law Governs.   The validity and construction
1  of a contract of insurance are governed by the laws of the state
where the final act occurs which makes the contract binding.
So held where a certificate was issued in a foreign state, but de-
livered in this state *after* initiation and payment of fee there-
for and first assessment.

CONSTITUTIONAL LAW: "Full Faith and Credit" clause. No
2   violation of the "full faith and credit" clause of the Federal
    Constitution is involved by construing a contract of insurance
    according to the laws of the state where the contract is con-
    summated, and compelling payment to the one legally entitled
    to the same, even though such person is not specifically named
    in the contract, and even though the indemnity has been paid
    to an unauthorized person who is named as the beneficiary in
    the contract.

INSURANCE:   Prohibited Beneficiary—Foreign Company.   A *for-*
3   *eign* fraternal beneficiary association may not, in a policy deliv-
    ered by it in this state, validly make the indemnity payable
    to one who could not legally be such beneficiary in a policy
    issued by a *resident* association.   (See Sec. 1824, Code, 1897;
    Sec. 1832, Code Supp., 1913.)

INSURANCE:   Illegal Beneficiary—Insurer as Beneficiary.   A fra-
4   ternal beneficiary society may not validly provide that the soci-
    ety itself shall be the beneficiary in case the designated bene-
    ficiary shall fail for illegality.

INSURANCE:   Indemnity Passing to Insured's Estate.   Failure of
5   a designated beneficiary, in a fraternal beneficiary certificate,
    to take the indemnity, because of illegality in such beneficiary
    to be such, passes the indemnity to the insured's estate.

ALIENS:   Abatement of Action (?) or Continuance (?)   An action
6   may not be wholly abated on the sole ground that the plaintiff
    is a nonresident alien enemy.   The utmost impediment which
    the court should interpose in such a case is to continue the ac-
    tion until peace is restored between the belligerent countries.

*Appeal from Bremer District Court.*—JOSEPH J. CLARK,
Judge.

JANUARY 15, 1919.

SUPPLEMENTAL OPINION ON REHEARING, JANUARY 20, 1920.

A certificate of insurance was issued, January 16, 1905,
by defendant, a fraternal society organized under the laws
of Michigan, with indemnity of $1,000 in event of death of
William Nuhn, payable to Lillian I. Ingalls, described there-
in as a dependent.  The assured died, May 24, 1913.  Proofs

of loss were furnished, and the indemnity paid to the beneficiary named. Weiditschka was appointed administrator of the decedent's estate, June 27th following, and this action begun by him, as administrator, to recover the indemnity, March 19, 1914. To the petition praying for recovery, the defendant interposed several defenses. Demurrer to five of these was sustained. As to the sixth defense, the cause was continued. The defendant appeals.—*Affirmed.*

*Sager & Sweet* and *Miller & Wallingford,* for appellant.

*Pickett, Swisher & Farwell, Henry Vollmer,* and *F. P. Hagemann,* for appellee.

LADD, C. J.—A certificate of membership was issued to William Nuhn, January 16, 1905, by the defendant, a fraternal beneficiary association, organized under the laws of Michigan. Its funds are raised by assessment. It is managed for the benefit of its members, and not for profit. The beneficiary named in the certificate was Lillian I. Ingalls, a dependent, not related in any way to the assured. Upon the death of Nuhn, May 24, 1913, proofs of loss were submitted, and the association paid the stipulated indemnity to the beneficiary named. W. Weiditschka was appointed administrator of decedent's estate, June 27th following. This suit for such indemnity was begun March 19, 1914, by the administrator of decedent's estate, and is met with several objections to recovery.

I. The association has a lodge system, with ritualistic form of work. Nuhn applied to a local lodge at Waverly, Iowa, known as Waverly Tent No. 2, for membership, and the application was mailed by its officers to the head officers of the association in Michigan, by whom it was accepted, and the certificate of membership issued and mailed to the record-keeper of Waverly Tent No. 2, and by him coun-

1. INSURANCE: what law governs.

tersigned, and then delivered to Nuhn. Thereupon, the latter was initiated into the association by the local lodge, paid the fee asked therefor, and his first assessment.

Contrary to appellant's contention, the contract of insurance so consummated is governed by the laws of Iowa, rather than those of Michigan. The recent cases are quite in accord in holding that the place where the final act occurs which makes, the insurance binding is the place of the contract, and that the validity and construction of the contract are, therefore, to be determined by the laws of that place. *Northwestern Mut. Life Ins. Co. v. McCue,* 223 U. S. 234 (56 L. Ed. 419) ; *Haas v. Mutual Life Ins. Co.,* 90 Neb. 808 (Ann. Cas. 1913 B. 919, with cases collected at page 926) ; *Wilde v. Wilde,* 209 Mass. 205 (95 N. E. 295). See *Collver v. Modern Woodmen,* 154 Iowa 615, as to agency of the officers of local lodge in such a case. Nothing in *Bush v. Modern Woodmen of America,* 182 Iowa 515, is in conflict with the above. The question under consideration was not involved in that case.

II. It is argued, however, that the decision we reach would violate the clause of the Constitution exacting that:

"Full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state." Section 1, Art. IV, Constitution of the United States.

2. CONSTITUTIONAL LAW: "full faith and credit" clause. Nothing in violation of this clause can be inferred from a decision that the contract is governed by the laws of the state where made, rather than where one of the parties was organized and has its chief place of business, nor enforcing that contract by compelling compliance therewith by payment to the person entitled thereto, even though the amount has been turned over to another.

The defendant association had no right to transact business in this state without permission, and even then was

bound to proceed in accordance with its laws. *Nelson v. Nederland Life Ins. Co.,* 110 Iowa 600; *American Fid. Co. v. Bleakley,* 157 Iowa 442; *New York L. Ins. Co. v. Cravens,* 178 U. S. 389 (44 L. Ed. 1116). In the last named case, the court said:

3. INSURANCE: prohibited beneficiary: foreign company.

"The power of the state over foreign corporations is not less than the power of a state over domestic corporations. No case declares otherwise. We said in *Orient Ins. Co. v. Daggs,* supra: 'That which a state may do with corporations of its own creation, it may do with foreign corporations admitted into the state. This seems to be denied; if not generally, at least as to plaintiff in error. The denial is extreme, and cannot be maintained. The power of a state to impose conditions upon foreign corporations is certainly as extensive as the power over domestic corporations, and is fully explained in *Hooper v. California,* 155 U. S. 648.' "

In *American Fidelity Co. v. Bleakley,* 157 Iowa 442, we said:

"The appellant's claim that the policy in question should issue because of interstate comity cannot be sustained. The state has the undoubted right to say whether foreign corporations shall be permitted to do business here at all, and, if such permission is granted, it may be upon such terms and conditions as the state shall prescribe. And where it is the manifest intention to limit or restrict the powers given to such corporation by its charter, courts have no authority to override such legislation on the ground of comity between the states. Within its power, the state, through its legislature, is supreme, and the court's duty is ended when it determines what the statutory law is."

See, also, *Frick v. Hartford Life Ins. Co.,* 179 Iowa 149.

Nor can an infraction of the Fourteenth Amendment to the Constitution of the United States be said to be involved

in compelling an insurance association to pay the stipulated indemnity to those entitled thereto, even though payment has been made to another not lawfully entitled thereto.

III. Section 1832 of the Code Supplement, 1913, in addition to prescribing conditions on which associations like defendant may transact business in this state, declares that:

"If the auditor of state shall approve the articles and also the by-laws or rules, he shall issue to the society, order or association a permit in writing, authorizing it to transact business within this state for a period of one year from the first day of April of the year of its issue. Societies, orders or associations not organized under the laws of this state, in addition to the requirements of the provisions of Section 1829 of the Code, must also comply with all of the provisions of this chapter, except as to the residence of membership."

Section 1824 of the Code forms a part of this chapter and provides that:

"No fraternal association created or organized under the provisions of this chapter shall issue any certificate of membership to any person under the age of fifteen years. nor over the age of sixty-five years, nor unless the beneficiary under said certificate shall be the husband, wife, relative, legal representative, heir or legatee of such member."

Appellant argues that the former section has no application to the latter, but applies only to the general provisions having reference to foreign companies, and bases its argument largely on the legislative construction. The language quoted, however, is too plain to permit of any doubt; for the requirements are in addition to Section 1829 of the Code, and exact compliance, not with part, but "with all of the provisions of this chapter, except as to the residence of membership." The language could not well be plainer; and, as the subsequent acts of the legislature are not in-

consistent with the exaction of obedience to Section 1824, we have no trouble in reaching the conclusion that foreign associations admitted to do business are bound by Section 1824 of the Code.

IV. One of defendant's by-laws provides for payment of every loss under the certificate to a dependent, and that, "if the designation of beneficiary shall fail, for illegality or otherwise, the benefit shall revert to the Life Benefit Fund." As contended by appellant, the members of such an association, as well as their heirs, are bound by its by-laws, if valid. *Ross v. Modern B. of A.*, 120 Iowa 692; *Boeck v. Modern Woodmen,* 162 Iowa 159; *Roeh v. Business Men's Prot. Assn.,* 164 Iowa 199; *Elliott v. Home Mutual Hail Assn.,* 160 Iowa 105.

**4. INSURANCE: illegal beneficiary: insurer as beneficiary.**

Possibly, where there is no provision to the contrary, the indemnity may be made payable to someone other than those defined by a statute. See *Grand Lodge A. O. U. W. v. Cleghorn,* (Tex.) 42 S. W. 1043. Section 1824 of the Code excludes any not named therein, by declaring that:

"No fraternal association created or organized under the provisions of this chapter shall issue any certificate of membership to any person,   *   *   *   unless the beneficiary under said certificate shall be the husband, wife, relative, legal representative, heir or legatee of such member."

As no such certificate shall be issued to the beneficiary other than of the classes named, designating a dependent as such, or even the association, would seem to be prohibited. See *Smith v. Supreme Tent, Knights of Maccabees,* 127 Iowa 115, where Section 1824 of the Code was construed in ascertaining whether the beneficiary named in a certificate issued by this same association was entitled to the indemnity promised.

Lillian Ingalls was not connected with the insured otherwise than as a dependent, and therefore her designation

as beneficiary was illegal. It is argued, however, that the company is not liable, for that, under such circumstances, the by-law declares that "the benefit shall revert to the Life Benefit Fund." This is tantamount to naming the association as the beneficiary. The indemnity, under these circumstances, would be distributed to all the members of the association, and be made use of in meeting losses instead of assessments collected. To make the association a beneficiary is quite as inconsistent with the provisions of Section 1824 of the Code as the designation of a dependent. In this state, the rule has long been established that, in event of some omission or illegality in the designation of a beneficiary, as exacted by the statute, the benefit or indemnity will pass to the estate of the assured. *Schmidt v. Northern Life Assn.*, 112 Iowa 41; *Oliphant v. American Health & Acc. Assn.*, 147 Iowa 656.

5. INSURANCE: indemnity passing to insured's estate.

In *Boeck v. Modern Woodmen,* supra, the place of the contract only was involved.

V. The defendant, by way of amendment to the amended and substituted answer, pleaded in bar that the heirs of the insured were residents and citizens of Germany, and therefore that the court erred in continuing the cause; that, instead, the action should have been abated. The action was begun March 19, 1914, and this amendment was not filed until September 25, 1917; and the issue is whether, in such a situation, the action should be abated, or should be continued until the termination of hostilities between this country and the empire of Germany. There is no controversy but that the heirs are alien enemies, of a character which precludes prosecution of action in our courts; for they reside in and are citizens of Germany. Though it is often said by the law writers that an alien enemy cannot sue, for that to permit a recovery would strengthen and aid, in

6. ALIENS: abatement of action (?) or continuance (?)

resources, the hostile government, and thereby weaken our own resources, this depends somewhat on other considerations, as place of residence and rights accorded resident alien enemies by our government.    The test of the right to sue which generally obtains is residence, rather than nationality; the location of the alien enemy, and not the fact that he is such.    See *Wells v. William*, 1 Lord Raym. 282; *Clarke v. Morey*, 10 Johns. (N. Y.) 69, 70; *Porter v. Freudenberg*, 1 K. B. (1915) 857 (Ann. Cas. 1917 C. 215).    See, also, an article in the Yale Law Journal of December, 1917, and notes to *Daimler Co. v. Continental Tyre & Rub. Co.*, Ann. Cas. 1917 C. 170, 193.    The learning on the subject appears in these cases, and leaves no doubt as to the fact that the heirs of the assured, at least, might not prosecute an action in the courts of this country.    It will be observed, however, that the suit was begun about three years before the government of the United States was engaged in war with Germany.    The administrator, who was a citizen of this country, undoubtedly acted in a representative capacity, and, in prosecuting the action and in recovering the insurance indemnity, if this happened, necessarily acted in a trust capacity for those ultimately entitled to the proceeds. In this situation, there would seem to be no good reason for postponing the suit; for whatever might be recovered necessarily would lodge in the hands of the administrator.    That officer is under the control of the court, and might very well be directed to retain the funds, for distribution after the termination of the war.    See *Krachanake v. Acme Mfg. Co.*, 175 N. C. 435 (95 S. E. 851, 852) ; *Birge-Forbes v. Heye*, 248 Fed. 636.

The object is not to defeat the alien enemy of his right to recover whatever may be owed to him, nor to shield the citizen from the enforcement of his just obligations, but to obviate the deriving of any advantage by the enemy, directly or indirectly, pending hostilities.    These reasons have

persuaded many courts to postpone, rather than abate, actions begun before the countries were engaged in war. That such a defense may be either temporary or final appears from *Schmitz v. Van Der Veen & Co.*, 112 L. T. N. S. (Eng.) 991:

"In the first place, an alien enemy cannot maintain an action in our courts, not because his enemy character constitutes a defense to his claim, but because it deprives him of *locus standi*. He is, while that character lasts, under a temporary disability to sue. Yet the cause of action, if otherwise good, is unaffected. But secondly, in some cases the enemy character does affect the cause of action, as where it is upon an insurance of enemy ships or goods. It being the object of the Crown to destroy the commerce of the enemy, a contract to indemnify him against such loss is or becomes illegal, and there is no cause of action. In such a case, even if the broker, a British subject, sues, and the policy was underwritten before the war, the action still fails, and fails finally, not because the beneficiary is an enemy, but because the cause of action is bad.   *   *   *   It is essential to distinguish carefully between these two cases, i. e., that where the cause of action is unexceptionable, but the plaintiff, as an alien enemy, is temporarily and personally incapable of being received as a plaintiff, and that where the cause of action, whoever puts it forward, fails in itself, and fails finally. It cannot be put more clearly than in the words of Lord Ellenborough, in *Flindt v. Waters*, 15 East 260: 'The defense of alien enemy must be accommodated to the nature of the transaction out of which it arises; it may go to the contract itself on which the plaintiff sues, and operate as a perpetual bar; or the objection may, as in a case of this sort, be merely personal in respect to the capacity of the party to sue upon it.' "

Though there are some cases which hold that, where a person, after bringing action, becomes an alien enemy, he

will be barred from further maintaining the action, the better view seems to be that the proceedings will be stayed merely, and not dismissed, unless the action itself ought not to be maintained. The authorities are well reviewed in *Luczycki v. Spanish River Pulp, etc.*, 34 Ont. L. Rep. 549, and the conclusion reached that where, during the action, the plaintiff becomes an alien enemy, the litigation will merely be suspended, because of the temporary incapacity of the plaintiff to go on with the action, and that it will remain in abeyance until the impediment be removed by the close of the war. See note to *Daimler Co. v. Continental Tyre, etc., Co.*, Ann. Cas. 1917 C. 170, at page 207; *Taylor v. Albion Lbr. Co.*, 176 Cal. 347 (168 Pac. 348) ; *Krachanake v. Acme Mfg. Co.*, supra; *Levine v. Taylor*, 12 Mass. 8; *Bell v. Chapman*, 10 Johns. (N. Y.) 183.

A different view prevailed in *Howes, etc., Co. v. Chester & Co.*, 33 Ga. 89; but the authority of that case is considerably impaired, since it turned out that there was no alien enemy involved. *Texas v. White*, 7 Wall. 700 (19 L. Ed. 227).

As pointed out by Judge Speer, in *Plettenberg, Holthaus & Co. v. Kalmon & Co.*, 241 Fed. 605, the opinion must be regarded as academic. Quoting from Judge Speer:

"With the evolution of law, the courts of the English-speaking peoples exhibit greater magnanimity in affording opportunity of redress to alien enemies. Notwithstanding a ruling of Sir William Scott, afterwards Lord Stowell, made in 1799, to the contrary, the British prize courts of today hear any alien enemy asserting rights under a convention of the Hague Peace Conference. Shall the courts of the United States then, wholly deny a hearing to one not such when he here sought redress, but who has since become an alien enemy? To do this would not, in my judgment, accord with the spirit of our institutions, nor with the spirit of our government, which disclaimed hostilities to

the German people when it proclaimed war in defense of freedom and of a common humanity."

Circuit Judge Buffington, in *Kaiser Wilhelm II.,* 246 Fed. 786, after reviewing the facts of the case, remarked that it called "for the exercise of that range of discretion" peculiar to the court of admiralty, and that this would be—

"An order which will make due provision for, first, giving the German citizen and belligerent an opportunity to litigate his rights, if relations with his country are hereafter resumed; second, providing for adjudging, if the government hereafter so desires, its rights and liabilities, if any, in taking over libeled property of the German subject; third, adjudging hereafter what effect the taking of this ship by the government had on the claim of the British lienor, and the further obligation of the German vessel owner, as between themselves. In following this course, and protecting the unprotected rights of an absent German citizen while this country is at war with the imperial government of its country, we are impelled by three all-sufficient reasons: First, the innate sense of fairness, decency, and justice which respects the rights of an enemy; second, the broad principles of international intercourse, which lead courts and nations that believe in international rights to be the more careful to observe them toward belligerents; and lastly, because the awarding to this German citizen, with whom our country is at war, the careful preservation until times of peace of its rights, is in line with those high ideals of Anglo-Saxon justice which led the British courts years ago, in *Re Boussmaker,* 13 Vesey 71, decided in 1806, to allow the claim of an alien enemy to be proved in time of war, and the dividends held by the British court until peace. Indeed, the fact that our country is now at war with Germany is all the more reason why this court should most scrupulously award to this German citizen those interna-

tional and equitable rights which no fair-minded people ever
deny, even to their enemies in times of war."

On principle and authority, then, we reach the conclu-
sion that the court did not err against the appellant in over-
ruling the plea involved, and postponing the further hearing
of the cause until the termination of the war.   The plain-
tiff did not appeal; and therefore we have no occasion to
decide whether the plaintiff might well have been permitted
to go on with the case, and the court retain whatever might
be recovered in the hands of the administrator until peace
should be restored.—*Affirmed.*

EVANS, PRESTON, and SALINGER, JJ., concur.

### SUPPLEMENTAL OPINION.

PER CURIAM.—Appellant suggests, in its petition for
rehearing, that the conclusion reached in the opinion de-
stroys the principle of uniformity, as between the members,
and the members and the association, but does not explain
how this will be brought about, save by citing *Supreme
Council of the Royal Arcanum v. Brashears,* 89 Md. 624
(43 Atl. 866).   On the trial of that case, the beneficiary
named in the certificate of insurance, suing for indemnity
stipulated therein, offered in evidence a duly certified copy
of Chapter 281 of the Acts of 1895 of the state of Massachu-
setts, relating to misrepresentation in applications for mem-
bership in fraternal beneficiary associations, which read:

"When any certificate is issued to a resident of the
commonwealth by any fraternal beneficiary corporation or-
ganized under the laws of or admitted to do business in this
Commonwealth, no oral or written misrepresentations or
warranty made by the assured or in his behalf in the applica-
tion for such certificate, or in the negotiation of the con-
tract, shall be deemed material or defeat or void the certifi-
cate or prevent its attaching, unless such misrepresentation

or warranty is made with actual intent to deceive, or unless the matter misrepresented increased the risk of loss."

The court held that this was admissible, for that a certificate was issued by a Massachusetts corporation, and therefore the statute in question was applicable thereto, even though the act apparently applied only to cases where certificates of membership were issued to residents of Massachusetts, the court saying:

"The mutuality and fraternity which form the basis of mutual benevolent associations and kindred organizations require that all of their members shall be treated alike. It would be fatal to the whole benefit scheme of the Royal Arcanum if, when the case of the beneficiary of a Massachusetts member of the organization were on trial, his or her rights should be measured by a more favorable standard than would be applied to the beneficiary of a Maryland member. The regulations contained in the constitution and by-laws of the society contemplate like treatment of all of its members of the same class, without special favor or advantage to any, under a similar state of facts."

Otherwise, a certificate of insurance valid in Massachusetts must have been adjudged invalid in Maryland, and in Pennsylvania. *Fidelity Mut. Life Assn. v. Ficklin*, 74 Md. 172 (21 Atl. 680). It is to be noted, however, that there was no statute in Maryland interfering with this conclusion. In Missouri, a statute provided that, in suits on insurance contracts, suicide by the insured shall not constitute a defense, unless contemplated when application therefor was made, notwithstanding that a stipulation in the policy to the contrary uniformly has been held applicable to suits on certificates issued by foreign fraternal associations. *Schmidt v. Supreme Court U. O. of F.*, 228 Mo. 675 (129 S. W. 653). This, of necessity, allows a defense in one state not available in another, and thereby seems to tolerate the inequality denounced in the Maryland decision, though

doubtless on the ground that the foreign association, in doing business in Missouri, undertook to conform to its laws. Appellant also relies on *Supreme Council of Royal Arcanum v. Green,* 237 U. S. 531, where the power of fraternal beneficiary associations to increase the assessments required to be paid was involved.   Although the Supreme Judicial Court of Massachusetts had ruled, in *Reynolds v. Supreme Council of Royal Arcanum,* 192 Mass. 150, that the increase of assessments was within the power of the company, the Court of Appeals of New York, in *Green v. Supreme Council of Royal Arcanum,* 206 N. Y. 591, ruled otherwise; and in this last case, on appeal to the Supreme Court of the United States, 237 U. S. 531, Chief Justice White, in the course of his opinion, observed that:

"An assessment which was one thing in one state and another in another, and a fund which was distributed by one rule in one state and by a different rule somewhere else, would, in practical effect, amount to no assessment, and no substantial sum to be distributed.   It was doubtless not only a recognition of the inherent unsoundness of the proposition here relied upon, but the manifest impossibility of its enforcement, which has led courts of last resort of so many states, in passing on questions involving the general authority of fraternal associations, and their duties as to subjects of a general character concerning all their members, to recognize the charter of the corporation and the laws of the state under which it was granted, as the test and measure to be applied."

The power to fix and collect assessments is fundamental in the organization of fraternal mutual insurance companies, and the court ruled that the New York court, in not giving to the charter, as amended, and the laws of Massachusetts, as announced by its Supreme Judicial Court, full effect, disregarded the full faith and credit clause of the Constitution.   The soundness of the decision is beyond

question.   Any other ruling would impinge upon the prin-
ciple of mutuality between members which is basic in the or-
ganization of all fraternal associations, and would destroy
that equality as between members which is essential to their
continued existence.   The trouble with appellant's conten-
tion lies in the assumption that any question touched in
the cases cited is involved in ascertaining who is entitled to
the stipulated indemnity.   It is of no concern to other
members whether, upon the death of a member, the benefit
is paid to a beneficiary of one class or another.   Nor is this
material to the association.   Its sole concern is that it reach
the person entitled thereto.   The different classes from whom
the member may choose are designated by statute, but he
alone may select from these; and his choice, or any change
therein, cannot well affect the relations between him and
other members nor those between the members and the as-
sociation.   For these reasons, it cannot well be said that the
naming of specified beneficiaries is essential to the organ-
ization of a mutual benefit association, nor that the power
to define who shall be entitled to benefits rests solely with
the society, or with statutes of the state where organized.
The case on which appellants seem to rely, *United Order of
the Golden Cross v. Merrick,* 165 Mass. 421 (43 N. E. 127),
construes certain statutes of Massachusetts, which declare,
in substance, that a foreign fraternal association may do
business in the state "by conforming in other respects to
the foregoing provisions." among which was one declaring
that "the corporation may also provide in its by-laws for
the payment, from time to time, of a fixed sum by each mem-
ber to be paid to the beneficiaries of the deceased member
in such amount and manner as shall be fixed by said by-laws
and written in the benefit certificate issued to said mem-
ber, and payable to the husband, wife, child, relatives of,
**or** persons dependent upon, such member."   The court held
**that,** inasmuch as this did not expressly prohibit naming a

beneficiary other than of one of these classes, such bene-
ficiary named in a certificate of an association organized in
Tennessee, where there are no statutory restrictions, was
entitled to the benefits.   This · seems in conformity with
other decisions.   See cases collected in 1 Bacon on Benefit
Societies 561.   Also, see *Gruber v. Grand Lodge A. O. U. W.*,
79 Minn. 59 (81 N. W. 743).   Our statute prohibits the is-
suance of a certificate of insurance when a beneficiary other
than one of the classes named is designated, and therein
differs from that of Massachusetts, and  possibly  other
states.   It was competent for the lawmakers to prescribe
under what conditions foreign mutual associations might en-
gage in business in this state.   *Scottish Union & Nat. Ins.
Co. v. Herriott,* 109 Iowa 606;  *New York Life Ins. Co. v.
Cravens,* 178 U. S. 389.   This rule was recognized in *Dwo-
rak v. Supreme Lodge, W. B. Frat. Assn.,* 101 Neb. 297 (163
N. W. 471).   The defendant in that case was organized un-
der the laws of this state, but the court held that the statute
of Nebraska specifying the classes from which the benefi-
ciaries must be chosen, controlled, saying :

"The statutory provision limiting and defining the
classes of persons to whom death benefits should be paid be-
came as much·a part of the contract of insurance as if it
had been written therein, and it declared the policy of the
state with respect to such contracts."

In referring to *Supreme Council Royal Arcanum v.
Green,* supra, as being relied on by appellant, the court ob-
served that:

"The question in this case is so different that the opin-
ion in that case does not control its decision.   The question
there involved the relation existing between the corporation
and its members, and between the members themselves, with
respect to uniformity of assessments in different states.
Here, we are not concerned with such questions, since such

relations have all been terminated by the maturity of the contract."

In *Dennis v. Modern B. of A.,* 119 Mo. App. 210 (95 S. W. 967), the court held that, "where a society may depend for its power to do business on the statutes of two states, one where it is organized, and the other wherein it is permitted to do business as a foreign corporation, the statute of the latter will control as to who can become beneficiaries in cases originating in the latter," the court observing that, "since no foreign association could do business here without the authority of this state, it must bring itself within the terms of such authority. That is to say, it must bring itself within the description of the local associations in this state, which means they must have for their object the benefit of the same class or classes of beneficiaries that are named in our statutes."

In *Baltzell v. Modern W. of A.,* 98 Mo. App. 153 (71 S. W. 1071), and *Herzberg v. Modern B. of A.,* 110 Mo. App. 328 (85 S. W. 986), the legal representatives of the assured were named as beneficiaries; and, after noting that legal representatives might not be named as beneficiaries under the Missouri statute, though this might be done in the state where organized, the court ruled that such representatives might not recover. In *Wilson v. Supreme Conclave Imp. Ord. of Heptasophs,* 174 N. C. 628 (94 S. E. 443), it was held that such a certificate, when a North Carolina contract, was governed by the statute of that state, although the company was organized in Maryland. In *Supreme Court I. O. of F. v. Fisher,* 172 Ill. App. 454 after reviewing the decisions of that state, the court reached the conclusion that a statute of that state, defining the classes from which beneficiaries were to be chosen, controlled, rather than the certificate of a foreign association. We have discovered no decision to the contrary, nor has any been cited. The certificate considered in *Belknap v. Johnston,* 114 Iowa 265, was

held to be an Illinois contract, and therefore to be construed according to the laws of that state. Enough has been said to dispose of the contention that the full faith and credit clause of the Constitution is being violated. To enforce a statute of this state and uphold its policy will not be construed to evidence an indisposition to accord to those of another state full faith and credit. Our offense, if it be such, lies in holding that the controversy is ruled by the Iowa, rather than the Michigan, statute.

The association, organized in the state of Michigan, upon being permitted to engage in business in this state, undertook to do so in accordance with its laws. It might have proceeded without issuing a certificate of insurance with indemnity payable to a beneficiary of a class not sanctioned in this state, though allowed under the laws of Michigan. Other classes from which to choose were common to the statutes of both states; and surely, in holding that such an association, after undertaking to comply with the requirements of this state as a condition to engaging in business therein, may be compelled to perform what it has undertaken, we do not ignore the constitutional requirement that full faith and credit be accorded the public acts of Michigan, but rather, exact that compliance with the laws and policy of this state which defendant had promised to carry out upon being permitted to engage in business in Iowa. The ruling does not draw the statutes of Michigan into question. The opinion is adhered to, and the petition for rehearing overruled.

WEAVER, C. J., LADD, EVANS, PRESTON, and SALINGER, JJ., concur.