H. P. DREWRY, S. A. R. L., Respondent-Appellant, *v.* ARISTOTELES S. ONASSIS, Appellant-Respondent.

First Department, June 4, 1943.

*Henry Selden Bacon* of counsel (*Selden Bacon* with him on the brief; *Duer, Strong & Whitehead,* attorneys), for respondent-appellant.

*Francis Xavier Nestor* of counsel (*T. Catesby Jones* and *Oscar R. Houston* with him on the brief; *Bigham, Englar, Jones & Houston,* attorneys), for appellant-respondent appearing specially herein.

COHN, J. On October 2, 1942, plaintiff served upon defendant a summons and complaint in this action to recover the sum of $362,489.65 with interest. The suit is grounded on a judgment of the High Court of Justice of England, King's Bench Division, rendered on February 12, 1942, which confirmed the award of an arbitrator in a special case entitled " In the Matter of an Arbitration between H. P. Drewry, S. A. R. L., Claimant, and Aristoteles S. Onassis, Respondent.'' (72 Ll. L. L. R. 29.) The subject matter of the arbitration was the breach of a contract theretofore entered into between the parties.

Appearing specially, defendant moved for an order directing that the summons be vacated and that the complaint be dis-

missed on the ground that plaintiff is an unlicensed nonresident alien enemy and in consequence thereof may neither institute nor prosecute this suit; that the courts of this State lack jurisdiction to entertain the action under the common law and under the express provisions of sections 2(a) and 7(b) of the Trading with the Enemy Act (40 U. S. Stat. 411, 416; U. S. Code, tit. 50, Appendix, §§ 2, 7).

The Special Term held (1) that plaintiff is an alien enemy within the definition of the Trading with the Enemy Act (2) that the motion to dismiss the action should be denied, (3) that the action may proceed to judgment, and (4) that the proceeds of the judgment, if and when obtained, be delivered to the Alien Property Custodian for such disposition as may later be determined. Upon a reargument invoked by both sides, the court adhered to its original determination.

From the orders entered thereon both plaintiff and defendant appeal. Defendant contends that it is entitled to an order vacating the summons and dismissing the complaint, whereas plaintiff urges the order should be modified, (1) by striking therefrom the direction for payment to the Alien Property Custodian, (2) by reversing the implication that plaintiff is an alien and (3) that otherwise the orders should be affirmed.

The main question presented upon this appeal is: Is plaintiff a nonresident alien enemy of the United States?

The complaint alleges that plaintiff is a corporation incorporated under the laws of France in 1932, having its registered office in Paris, France, and that it is engaged in the business of importing coal and oil into France and its colonies and shipping oil from one part of the world to another. The corporation has an authorized and issued capital of 500,000 francs, which is divided into 500 shares of 1,000 francs each, 490 of which shares are held by Henry P. Drewry, a British subject residing in England, and the remaining ten by one Madame Sorbet, who has given a transfer in blank of such ten shares to H. P. Drewry.

The British arbitrator, acting as referee to hear and report to the court, found that plaintiff was a nonresident alien enemy but held that it had a license from the Treasury and Board of Trade sufficient to enable plaintiff to continue the proceeding. The King's Bench Division concurred in the view that plaintiff was not under a subsisting disability to prosecute its claim and granted judgment as recommended by the arbitrator. On appeal to the Court of Appeal, the holding with respect to plaintiff's right to proceed in the British courts was confirmed.

(*H. P. Drewry, S. A. R. L.,* v. *Aristoteles S. Onassis,* 71 Ll. L. L. R. 179.)  The Court of Appeal refused leave to appeal to the House of Lords.

On December 11, 1941, the Congress of the United States declared war on Germany and on March 18, 1942, the United States Treasury Department issued General Ruling No. 11 specifically extending the applicability of the Trading with the Enemy Act to the territory controlled or occupied by the military, naval or police forces or other authority of Germany, including the city of Paris and the additional portion of France then occupied by German forces.

Plaintiff urges that it is not and never has been an enemy of the United States; that since the German occupation, it has never carried on business in France, which is now enemy territory and that, accordingly, it may not be regarded as an enemy.

It is well settled that war suspends the right of nonresident enemy plaintiffs to prosecute actions in our courts.  (*Ex parte Colonna,* 314 U. S. 510; *Rothbarth* v. *Herzfeld,* 179 App. Div. 865, 867, 869, affd. 223 N. Y. 578.)  " It has been recognized universally as a principle of international law that war suspends the right of a non-resident alien enemy to prosecute actions in the civil courts."  (*Cohn* v. *Gismond & Co., Inc.,* 203 App. Div. 453.)

The controlling reason for the rule appears to be that if the alien enemy prevails and obtains a judgment he will obviously add the sum he recovers to the resources of the power of which he is a subject.  In *Hanger* v. *Abbott* (73 U. S. [6 Wall.] 532) it was said, at page 536: " We suspend the right of the enemy, says Mr. Chitty [Chitty on Commerce & Manufacturers 423], to the debts which our traders owe to him, but we do not annul the right.  We preclude him during war from suing to recover his due, for we are not to send treasure abroad for the direct supply of our enemies in their attempt to destroy us, but with the return of peace we return the right and the remedy."

The Trading with the Enemy Act, so far as pertinent, provides as follows: " Sec. 2. The word ' enemy ', as used herein, shall be deemed to mean, for the purposes of such trading and of this Act—

" (a) Any individual, partnership, or other body of individuals, of any nationality, resident within the territory (including that occupied by the military and naval forces) of any nation with which the United States is at war, or resident outside the United States and doing business within such territory, and any corporation incorporated within such territory

of any nation with which the United States is at war or incorporated within any country other than the United States and doing business within such territory."

Section 3 of the Act renders it unlawful for any person in the United States, except with a license of the President, to trade with an enemy or ally of an enemy.

Section 7, subdivision (b), of the Act provides in part: " Nothing in this Act shall be deemed to authorize the prosecution of any suit or action at law or in equity in any court within the United States by an enemy or ally of enemy prior to the end of the war   *   *   *.''  Thus, under the provisions of the Trading with the Enemy Act nonresident enemies may not sue here unless they come within stated exemptions not material to this case.

Plaintiff in urging that it is not an alien enemy, in an affidavit submitted, states that its company is in the nature of a copartnership; that the initials " S. A. R. L." following its name are abbreviations for " Société a Responsibilité Limitée " (association with limited responsibility); that it is an association of persons rather than of capital; and that Mr. Drewry, a British subject, who is in sole control of the plaintiff's affairs and who owns practically all of its capital stock, carried on no business in France since June 11, 1940, when he left Paris three days before the German occupation of that city, and that the corporation has not engaged in business in France since that time.

As we read the statute, plaintiff comes squarely within the definition of an enemy, for it is a corporation incorporated within territory occupied by the military and naval forces of a nation with which the United States is at war.  Companies commercially domiciled or controlled in occupied territory are prohibited from maintaining a suit in our courts in the same way that residence in the enemy's own territory would act as a bar to bringing an action.  That is the rule established by the courts of England (*V/O Sovfracht* v. *Gebr Van Udens Scheepvaart En Agentuur Maatschappij,* 59 Times L. R. 101; *Porter* v. *Freudenberg,* [1915] 1 K. B. 857, 869; 58 Law Quarterly Review [1942], pp. 191, 201) and our Trading with the Enemy Act is in consonance with the English doctrine thus declared. (See also Huberich on Trading with the Enemy [1918], p. 61; *Clarke* v. *Morey,* 10 Johns. 69; *Weiditschka* v. *Supreme Tent K. M. W.,* 188 Iowa, 183, 191.)

Concededly, plaintiff is a French entity with its registered office in Paris, France.  That territory is occupied by the

military and naval forces of the enemy. Prior to the reargument of this motion on November 30, 1942, the German occupation had extended to the whole of continental France, and General Ruling No. 11 was amended to declare the newly conquered land enemy territory.

The very recent decision of the House of Lords in England (December 3, 1942) which unanimously reversed the Court of Appeal in the case of *V/O Sovfracht* v. *Gebr Van Udens Scheepvaart En Agentuur Maatschappij* (*supra*) held that a litigant of status similar to that of plaintiff was barred from prosecuting an action in the courts of England. There, a Dutch company incorporated under the laws of the Netherlands chartered one of its vessels to a Russian concern. For breach of the charter party the controversy was submitted to arbitration in England. When the German armies invaded Holland the Russian charterer sought to withdraw from the arbitration in England on the ground that the Dutch corporation had become a nonresident alien enemy. The House of Lords, in denying to the Dutch corporation the right to sue, made the following apposite observations: " On the main question, it is, of course common ground that an ' alien enemy ' cannot sue in the King's Courts or otherwise take up the position of an actor in British litigation, save under royal license. An alien enemy, in this connexion, does not mean a subject of a State at war with this country, but a person, of whatever nationality, who is carrying on business in, or is voluntarily resident in, the enemy's country: *Porter* v. *Freudenburg* (31 The Times L. R. 162; [1915] 1 K. B. 857, at p. 869). * * *

" I share to the full the feeling of distaste, expressed by the Master of the Rolls, at the idea that loyal Dutch subjects, who have suffered so cruelly at the hands of a brutal enemy and whose fellow countrymen are none the less maintaining from this country all the resistance they can to the invaders of their native land, should be regarded by English law, for any purpose, as alien enemies. But for the purposes of the statute law prohibiting trading with the enemy, they would plainly be so regarded, for ' enemy territory ' is defined, by section 15 (1) of the Act, so as to include ' any area which is * * * in the occupation of a Power with whom his Majesty is at war.' * * *

" If the enemy power invades and forcibly occupies territory outside his own boundaries, residence in that territory may disqualify from bringing or maintaining suit in the King's Courts in the like manner as residence in the enemy power's

own territory would. The same applied to a company commercially domiciled or controlled in occupied territory."

It is suggested that as the principal stockholder of plaintiff corporation is now in England, the company thus loses its character as a corporation existing in enemy territory. However, it is not the domicile of the stockholder, but of the corporation which must control. In *Behn, Meyer & Co.* v. *Miller* (266 U. S. 457, 472) the United States Supreme Court disapproved an attempt to disregard corporate identity and to fix the status of corporations according to the nationality of stockholders. (See, also, *Schulz Co.* v. *Raimes & Co.*, 100 Misc. 697 [opinion by LEHMAN, J., now Chief Judge of Court of Appeals].) In England, from which we derive many our our principles of law relative to the conduct of war, the rule is the same. " A company incorporated in an enemy country is an alien enemy regardless of how its shares are held." (1 Halsbury's Laws of England, p. 447; *Amorduct Manufacturing Co., Lim.* v. *H. Defries and Co.*, 112 L. T. Rep. 131.)

It is clear that at the time of the commencement of this action plaintiff was, and still is, an enemy within the meaning of the term as employed in the Trading with the Enemy Act. Though the Special Term was correct in so deciding, in view of the settled law that war suspends the right of unlicensed nonresident alien enemies to prosecute actions in our courts, the court should have granted defendant's motion to dismiss the complaint.

Both plaintiff and defendant have appealed from that portion of the order which provides that avails of the judgment, if any, be paid to the Alien Property Custodian. Under existing law, that official is not obligated, nor is he authorized, to receive funds of French corporations such as the plaintiff. We find no authority in statute or precedent to sustain a ruling which grants to a nonresident alien enemy the right to sue upon condition that the proceeds of his recovery be paid to the Alien Property Custodian. If such were the legislative intent, the statute would so provide. Every court is required to enforce the rule of law which prohibits a nonresident alien enemy from instituting or maintaining an action in our courts during war. (*Rothbarth* v. *Herzfeld, supra,* at p. 867.) " Absolute suspension of the right to sue and prohibition to exercise it exist during war, by the law of nations." (*Caperton* v. *Bowyer,* 14 Wall. 216, 236.)

For the foregoing reasons, the orders should be reversed, with twenty dollars costs and disbursements to the defendant,

and the motion to vacate and set aside the service of the summons and to dismiss the complaint granted.

MARTIN, P. J., TOWNLEY, UNTERMYER and DORE, JJ., concur.

Orders unanimously reversed, with twenty dollars costs and disbursements to the defendant, and the motion to vacate and set aside the service of the summons and to dismiss the complaint granted.