## CHEMACID, S. A., v. FERROTAR CORPORATION.

District Court, S. D. New York.

Sept. 15, 1943.

See, also, 3 F.R.D. 45.

Abraham L. Pomerantz, of New York City (Manfred Wolkiser, of New York City, of counsel), for plaintiff.

Solomon Goodman, of New York City, for defendant.

CONGER, District Judge.

On April 20, 1942, interlocutory summary judgment was granted in favor of the plaintiff and a Special Master was appointed by this court to take and state the account between the parties. The hearings before the Special Master have been held and closed, but he has not yet rendered his report.

The defendant now moves for a dismissal of the complaint on the ground that the court lacks jurisdiction. The plaintiff, Chemacid, S. A., is a corporation organized under the laws of Belgium. The defendant claims that since Belgium is occupied by the armed forces of Germany, this plaintiff is a non-resident alien enemy within the meaning of the Trading with the Enemy Act, 50 U.S.C.A.Appendix § 1 et seq.

■ The trading with the Enemy Act, although stating that, "Nothing in this Act shall be deemed to authorize the prosecution of any suit or action at law or in equity in any court within the United States by an enemy or ally of enemy prior to the end of the war, * * *", 50 U.S.C.A. Appendix § 7(b), does not expressly prohibit the institution of a suit or action.

The view that Section 7(b) of the Trading with the Enemy Act does not contain any affirmative prohibition against suits by enemies, but rather that Congress in enacting that section of the Act merely ·endeavored to make certain that it was to be understood that the common law remained in effect, was expressed by the Solicitor General in his brief for the United States as amicus curiae in Ex parte Kawato, 317 U.S. 69, at page 75, 63 S.Ct. 115, at page 119, 87 L.Ed. ——. Cf. Sommerich, Recent Innovations in Legal and Regulatory Concepts as to the Alien and His Property, (1943) 37 Am.J.Int.L. 58, 61.

The prohibition against the institution or prosecution of suits by enemies rests, therefore, not on statute, but on the common law. "From the language employed in the Act as well as from the evident intent of the framers of the bill and the legislative debates, the general purposes of the Act, in so far as the Act relates to the trade with and the property of enemies, are the following: * * * 4. To leave in force the common law provisions regarding the effect of war on contracts,

statutes of limitations, rights to devises and bequests, and rights as parties to actions, except in so far as the Act mitigates the rigor of the common law." Huberich, The Law relating to Trading with the Enemy (1918), p. 46, quoted in Kaufman v. Eisenberg, 177 Misc. 939, 942, 943, 32 N.Y. S.2d 450.

█ It is well settled that an enemy may not prosecute an action in our courts. Ex parte Colonna, 314 U.S. 510, 62 S.Ct. 373, 86 L.Ed. 379; Rothbarth v. Herzfeld, 179 App.Div. 865, 167 N.Y.S. 199, affirmed 223 N.Y. 578, 119 N.E. 1075. In like manner, the privilege of suing in our courts is withheld from a corporation domiciled in territory occupied by the enemy, since it is also deemed an enemy. Drewry v. Onassis, 266 App.Div. 292, 42 N.Y.S.2d 74.

In the instant case the domicile and registered office of the plaintiff corporation was moved to New York City by resolution of the board of directors on or about June 21, 1940 in accordance with the Belgian Decree-Law of February 2, 1940. The holders of approximately 99.8% of the capital stock of the corporation now reside in the United States or in England.

█ "The Government of the United States recognizes the Belgian Government now functioning in England as the Government of Belgium * * *." Certificate of the Secretary of State #4062, dated August 5, 1943. Recognition of a foreign government also embodies a recognition of its laws. United States v. Pink, 315 U.S. 203, 62 S.Ct. 552, 86 L.Ed. 796; United States v. Belmont, 301 U.S. 324, 57 S.Ct. 758, 81 L.Ed. 1134.

The Belgian Decree-Laws provide that Belgian corporations may remove their company seat (domicile) to any unoccupied territory or foreign country. Article 8 of the Decree-Law of February 19, 1942, which is a compilation of the earlier Decree-Laws. With respect to all corporate properties and affairs outside Belgium, the powers of stockholders, directors and officers residing in Belgium were and are suspended (Article 14 Decree-Law).

Our courts have accorded full faith and credit to the decrees and laws of the Governments in Exile. Anderson v. N. V. Transandine Handelmaatschappij, 289 N. Y. 9, 43 N.E.2d 502; Koninklijke Lederfabriek "Oisterwijk" N. V. v. Chase National Bank, 177 Misc. 186, 30 N.Y.S.2d 518, affirmed 263 App.Div. 815, 32 N.Y.S.2d

131; Amstelbank, N. V. v. Guaranty Trust Co., 177 Misc. 548, 31 N.Y.S.2d 194.

█ If we are to recognize and give effect to the Belgian Decree-Laws, we must and do hold that the plaintiff corporation is not a non-resident alien enemy, but rather a resident alien. Whether we consider the plaintiff a resident alien enemy or merely a resident alien is of no import since at common law a resident alien enemy could sue in our courts. Clarke v. Morey, 10 Johns., N.Y. 69. "A lawful residence implies protection, and a capacity to sue and be sued. A contrary doctrine would be repugnant to sound policy, no less than to justice and humanity." Chief Justice, later Chancellor, Kent in Clarke v. Morey, supra, 10 Johns., N.Y., at page 72. The right of alien enemies lawfully residing in the United States to have access to our courts is unquestioned in the absence of statute or presidential proclamation to the contrary. Ex parte Kawato, 317 U.S. 69, 63 S.Ct. 115, 87 L.Ed. ——; Petition of Bernheimer, 3 Cir., 130 F.2d 396. Cf. Gambera v. Bergoty, 2 Cir., 132 F.2d 414. "The ancient rule against suits by resident alien enemies has survived only so far as necessary to prevent use of the courts to accomplish a purpose which might hamper our own war efforts or give aid to the enemy. This may be taken as the sound principle of the common law today." Ex parte Kawato, supra, 317 U.S. at page 75, 63 S.Ct. at page 118, 87 L.Ed. ——.

In Drewry v. Onassis, supra, a French corporation was considered a non-resident alien enemy since its registered office was located in Paris, France, which is occupied by the enemy. The fact that the principal stockholder was in England was held to be immaterial; the controlling factor was the domicile of the corporation, not the domicile of the stockholder. The court in the Drewry case relied heavily upon the House of Lords decision in V/O Sovfracht v. van Udens Scheepvart, [1943] 1 All Eng. Rep. 76. In that case a company incorporated under the law of the Netherlands and having its principal place of business at Rotterdam instituted an action in the English courts. The court held that at common law a company incorporated under the laws of a neutral or an allied country which has been occupied by the enemy so that that country is provisionally under the effective control of the enemy is, by reason of the mere fact that it continues to carry on its business in that coun-

try, to be treated as an enemy alien to the extent that it is incapacitated from taking proceedings in the English courts to' recover a trade debt. In the course of the opinion it was said that: "The test (of enemy character) is an objective test, turning on the relation of the enemy power to the territory where the individual voluntarily resides or the company is commercially domiciled or controlled: it is not a question of nationality or of patriotic sentiment." Page 79. "If the enemy power invades and forcibly occupies territory outside his own boundaries, residence in the territory may disqualify from bringing or maintaining a suit in the King's courts in the like manner as residence in the enemy power's territory would. The same applies to a company commercially domiciled or controlled in occupied territory." Page 79. "* * * the test which has been taken of enemy character in English law is not nationality, but domicil in the sense of settled residence or, in the case of traders, commercial domicil." Page 84. "No doubt both in prize and at common law a person who is engaged in business in a country which becomes hostile, but is not resident there, is given a reasonable time to dissociate himself from the business if he wishes to avoid becoming an alien enemy and, even if he resides in such a country, it may be that he will escape the imputation of hostility by removing himself from it as quickly as is reasonably possible; * * * But there is no suggestion that such a course has been taken on behalf of the respondent company in the present case." Page 93.

A case on all fours with the case under consideration was decided in England a short time after the Sovfracht decision. There a Belgian corporation, under the provisions of the Belgian Decree-Law of February 2, 1940, moved its domicile to the United States. It brought an action in the English courts and the defendant asserted that the action should be stayed on the ground that the plaintiff had become an enemy alien at common law. The court held that the corporation, by the action it took in June, 1940, had established its commercial domicile in the United States and could continue the action even though Belgium had become enemy-occupied territory. The Pamia, [1943] 1 All Eng.Rep. 269. The court said that the only question was whether the plaintiff had succeeded in taking itself out of the decision of the

House of Lords in the Sovfracht case. To show that it had, the court referred to the objective test established in the Sovfracht case, i. e. where is the company commercially domiciled or controlled.

It is the opinion of this court that the facts of the case at bar take it out of the decision in the Drewry case, supra, since Chemacid, S. A., is not commercially domiciled in enemy-occupied territory.

Chemacid, S. A., has done all that it could do to sever completely its ties with occupied Belgium and to move its domicile to the United States. Its lawful domicile, at the present time, is in New York. It owes no allegiance to any person or government within the enemy-occupied territory of Belgium, but rather owes allegiance to the exiled Government of Belgium located in England and recognized by the Government of the United States. Both legally and de facto, Chemacid is effectively removed from German influence and subjected to the sovereignty of our own Government and the Belgian Government in Exile.

In all cases of this type, one of the most important aspects to be considered by the court is whether it will aid and comfort the enemy if the plaintiff is allowed to maintain the action and, if successful, recover a judgment. "There is nothing 'mysteriously noxious' * * * in a judgment for an alien enemy. Objection to it in these days goes only so far as it would give aid and comfort to the other side." Holmes, J., in Birge-Forbes Co. v. Heye, 251 U.S. 317, 323, 40 S.Ct. 160, 161, 64 L.Ed. 286. "The object is not to defeat the alien enemy of his right to recover whatever may be owing him, nor to shield the citizen from the enforcement of his just obligations, but to obviate any advantage being derived by the enemy, directly or indirectly, pending hostilities. * * *" Weiditschka v. Supreme Tent Knights of Maccabees, 188 Iowa 183, 191, 170 N.W. 300, 303, 175 N.W. 835. In this case it is difficult to see how the enemy can be aided and comforted since a judgment recovered by Chemacid cannot be enforced without a license from the Treasury Department. Cf. Domke, Trading with the Enemy in World War II (1943), pp. 305–310; Petition of Bernheimer, supra.

Since the English courts have recognized that these so-called "corporations in exile" are friends and have given them access to

their courts, there is no reason why we should deny them the right to prosecute an action in our courts in the absence of legislation or executive proclamation to the contrary. We do not close the doors of our courts to individuals who are resident alien enemies, therefore, why should we close them to resident alien corporations? It would be inequitable and unjust to hold that the plaintiff cannot maintain this action.

The motion to dismiss the complaint on the ground that the court lacks jurisdiction is, therefore, denied.