HUNGARIAN GENERAL CREDITBANK, Appellant, *v.* EDWARD H. TITUS, Respondent.

First Department, April 5, 1918.

**War — suit by alien enemy on promissory note — when prosecution of such action will be stayed — Trading with the Enemy Act construed — license to alien enemy to do business and prosecute actions here.**

A foreign corporation organized under the laws of a foreign power with which the United States is at war and which has no agency or representative in this country cannot maintain an action in the courts of this State on a promissory note during the continuance of the war and the prosecution of such action will be stayed.

Subsection a of section 4 and subsection b of section 10 of the Trading with the Enemy Act do not authorize the granting of a license to prosecute an action on such promissory note held by an alien enemy not residing here.

Although the Trading with the Enemy Act provides for the licensing of an enemy to do business in this country and to prosecute a suit or action arising out of business transacted here, said act does not authorize the issuance of a license to the attorney of a non-resident alien enemy permitting the prosecution of an action on a promissory note, and especially so where the note did not arise solely out of business transacted in this country under such license but related to transactions which occurred before the war and before the passage of said act.

MOTION by Edward H. Titus, defendant, respondent, for an order staying the prosecution of this action until after the termination of the war between the United States and the Kingdom of Hungary, and for other relief.

*Charles A. Ogren* of counsel [*Louis W. Severy,* attorney], for the motion.

*Morris Cukor,* for the plaintiff, opposed.

DAVIS, J.:

The plaintiff is a foreign corporation, organized under the laws of the Kingdom of Hungary, and has no agency or representative in this country. The United States declared a state of war to exist with the Kingdom of Hungary on December 7, 1917, the proclamation of the President was made on December 11, 1917 (Official Bulletin, Dec. 13, 1917, vol. 1, No. 183, pp. 1, 7) and the war has not yet been

terminated. The action is brought on a promissory note for $5,000, made by the defendant to the plaintiff, dated " New York, August 7, 1912," payable on demand at the Transatlantic Trust Company.

The amended and supplemental answers deny that the note was given for value and set up five separate defenses, to which the plaintiff has been directed to reply by this court. (See 175 App. Div. 504, 506.) One of the defenses is that defendant authorized plaintiff in writing to guarantee to the Wolfram Company up to $5,000 the account of Deuth & Co., and gave as further protection this said note, to be effective only in case defendant failed to live up to the terms of his guaranty; and the other defenses practically deny that the terms of this guaranty have been complied with and allege that, therefore, the action on the note cannot be maintained.

The plaintiff has appealed to this court from an order striking out the replies as sham and giving judgment for defendant, with leave to serve an amended reply, and also from an order denying a motion for a reargument of said motion to strike out. Both of these appeals came on for argument before this court, and, at the same time, the defendant made this motion for a stay herein.

The plaintiff, in opposition to this motion, claims that its attorney, on or about October 24, 1917, pursuant to the Trading with the Enemy Act, approved October 6, 1917 (40 U. S. Stat. at Large, 411, chap. 106; Id. 416, § 7, subd. a), duly reported to the Alien Property Custodian the pendency of this action and the fact that he had possession of the note in question, belonging to an ally of enemy, and that on November 5, 1917, pursuant to the provisions of said act and the direction of said custodian, he filed application with the War Trade Board, Bureau of Enemy Trade, for a license permitting the prosecution of this action, and that under date of November 22, 1917, a license was duly issued to him, the attorney of record. This purports to be dated November 22, 1917, and is headed: " Trading with enemy license No. E. T. 732. License to trade with a person who there is reasonable cause to believe is an ' enemy ' or ' ally of enemy ' or acting on behalf of or benefit of an ' enemy ' or ' ally of enemy.' " This license is issued to the

plaintiff's attorney to act on behalf of the plaintiff by continuing as its attorney in the prosecution of this suit, providing, however, that any money or property collected under this license shall be held by the licensee subject to the order of and report to the Alien Property Custodian and shall be subject to his supervision and direction.

It would appear that this license was granted under subsection a of section 5 of the Trading with the Enemy Act (40 U. S. Stat. at Large, 415). This section provides, among other things, that the President may grant licenses, special or general, temporary or otherwise, and for such period of time, and containing such provisions and conditions as he shall prescribe, to any person or class of persons to do business as provided in subsection a of section 4 of the act (Id. 413, 414), and to perform any act made unlawful without such license in section 3 of the act (Id. 412, 413), and to file and prosecute applications under subsection b of section 10 (Id. 420), and may revoke or renew such licenses as he sees fit, and that the President may exercise this power or authority through such officer or officers as he shall direct. Subsection a of section 4 relates exclusively to insurance companies and subsection b of section 10 relates only to applications for patents, etc. Neither of these specifically authorized the granting of a license to prosecute a suit. A reading of the Trading with the Enemy Act will not disclose any provision authorizing the granting of a license such as the plaintiff's attorney herein has obtained. The only provision for authorizing the maintenance of a suit by an enemy or an ally of enemy is to be found in the 3d paragraph of subsection b of section 7 (40 U. S. Stat. at Large, 417). That paragraph provides that "Nothing in this act shall be deemed to authorize the prosecution of any suit or action at law or in equity in any court within the United States by an enemy or ally of enemy prior to the end of the war, except as provided in section ten hereof: *Provided, however,* That an enemy or ally of enemy licensed to do business under this act may prosecute and maintain any such suit or action so far as the same arises solely out of the business transacted within the United States under such license," etc.

It will be observed that this license was issued to the

attorney instead of to the plaintiff. It is our opinion that an attorney at law cannot be deemed to come within the purview of the act so as to be licensed as an attorney to prosecute a suit for his client. What these sections mean is that, if any enemy or ally, such as the plaintiff, has been licensed to do business under this act, he may prosecute and maintain any such suit or action so far as the same arises solely out of the business transacted within the United States under such license, and it is in such cases only that an enemy or ally of enemy can prosecute an action during the existence of the war. In the license referred to, " to do business " applies to the party, such as the plaintiff to do its banking business, and, having received such license, such party as the plaintiff, for instance, could then maintain any suit or action so far as the same arises solely out of the business transacted within the United States under the said license. It is not the attorney that is to be licensed to do business, that is, to act as the attorney for the enemy, the plaintiff. The attorney is not doing any business which requires a license to do business. He is an officer of the Supreme Court, and can only be retained by an enemy to prosecute such suits as have been described above.

There is no evidence that the plaintiff has obtained any license to do business under these provisions, and if he had, it would not make any difference, because this action does not arise solely out of business transacted within the United States under any such license. All of the transactions occurred long before the war, before the passage of these acts, and most of them outside of the United States.

This court has held in *Rothbarth* v. *Herzfeld* (179 App. Div. 865; affd., 223 N. Y. 578) that the proper remedy is a stay of such action, and that the Trading with the Enemy Act of 1917 does not permit the prosecution of any suits in the courts during the war, except in cases provided in such act. We, therefore, think that the application should be granted, and the plaintiff stayed from a further prosecution of this action.

The motion should be granted, with ten dollars costs.

CLARKE, P. J., SMITH, PAGE and SHEARN, JJ., concurred.

Motion granted, with ten dollars costs. Order to be settled on notice.