**SWISS NAT. INS. CO., Limited, v. MILLER, Alien Property Custodian, et al.**

(Court of Appeals of District of Columbia. Submitted February 8, 1923. Decided May 7, 1923.)

No. 3842.

1. War ⊙═ 12—Property of Swiss corporation doing business in Germany was subject to seizure by Custodian.

Under Trading with the Enemy Act Oct. 6, 1917, § 2 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½aa), making a corporation doing business within enemy territory an enemy, and section 7c (section 3115½d), making enemy-owned property liable to seizure by the Alien Property Custodian, the property owned by a Swiss corporation which was engaged in business in Germany was subject to seizure.

2. War ⊙═ 12—Withdrawal from business in Germany did not change status of property of neutral corporation.

No change in the situation of the owning corporation after the seizure of its property by the Custodian could relieve the property from its status as enemy-owned property, and therefore the fact that a neutral corporation ceased to do business in Germany after its property was seized did not invalidate the seizure.

3. War ⊙═ 33—Termination of war did not entitle neutral corporation to return of property seized by Alien Property Custodian.

Under Trading with the Enemy Act Oct. 6, 1917, § 12 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½ff), providing that after the end of the war any claim of an enemy, or of an ally of an enemy, to property held by the Custodian shall be settled as Congress shall direct, it is evident Congress did not intend the official termination of the war should ipso facto entitle the owners of sequestered property to recover the same from the Custodian.

4. War ⊙═ 12—Swiss corporation, partly owned by Germans, is not entitled to return of property.

Even though Trading with the Enemy Act Oct. 6, 1917, as amended by Act June 5, 1920, § 9 (b), subsec. 1, entitling owner of sequestered property to recover possession from the Custodian, if a citizen or subject of a neutral nation, would be broad enough ordinarily to include corporations as well as natural persons, it is limited by subsection 6 of that section, expressly providing for the recovery of property by neutral corporations owned entirely outside of Germany, Austria, or Austria-Hungary, so that a Swiss corporation is not entitled to return of its property, where part of its stock was owned by Germans.

5. Statutes ⊙═ 194—Specific provision controls general one that otherwise would include subject-matter.

A specific provision relating to a particular subject must govern in respect to that subject as against general provisions in other parts of

⊙═ For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the act, although the latter, standing alone, would be broad enough to include the subject to which the more specific provision relates.

**6. War ⬅⬅12—Subsection designating corporations entitled to return of property impliedly excludes all others.**

The provision of Trading with the Enemy Act Oct. 6, 1917, as amended by Act June 5, 1920, § 9 (b), subsec. 6, designating the corporations which are entitled to return of property sequestered by the Alien Property Custodian, impliedly excludes the right of all other corporations to a return.

**7. War ⬅⬅12—Amendment authorizing return to specified claimants did not abandon original purpose of Trading with the Enemy Act.**

The amendment to Trading with the Enemy Act Oct. 6, 1917, by Act June 5, 1920, so as to permit the return of sequestered property to certain claimants, did not abandon the prime purpose of the original act, which was to prevent alien enemies from withdrawing their property from the country, and thereby increasing the resources of the enemy, and the amendatory act should not be construed to defeat that purpose.

**8. War ⬅⬅12—Amendment of Trading with the Enemy Act does not require resort to correspondence for construction.**

The provisions of Act June 5, 1920, § 9 (b), amending Trading with the Enemy Act Oct. 6, 1917, so as to authorize certain claimants to recover property sequestered by the Alien Property Custodian, so clearly exclude a corporation of a neutral country whose stock was partly owned by alien enemies as not to authorize a resort to correspondence and statements during the period of its consideration to aid in its construction.

**9. United States ⬅⬅125—Suitor must bring case within form and substance of consent to be sued.**

When the United States permits a suitor to sue it in its courts, the case brought cannot be sustained, unless both in form and substance it comes within the terms of the consent.

Robb, Associate Justice, dissenting.

Appeal from the Supreme Court of the District of Columbia.

Suit by the Swiss National Insurance Company, Limited, against Thomas W. Miller, as Alien Property Custodian, and another. Judgment for defendants, and plaintiff appeals. Affirmed.

Thomas Ruffin and Hoke Smith, both of Washington, D. C., for appellant.

Peyton Gordon and Dean Hill Stanley, both of Washington, D. C., for appellees.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and MARTIN, Judge of the United States Court of Customs Appeals.

MARTIN, Acting Associate Justice. Appeal from the Supreme Court of the District of Columbia. This case arises under the Trading with the Enemy Act, approved October 6, 1917 (40 Stat. 411), as amended June 5, 1920 (41 Stat. 977).

The suit was brought by the Swiss National Insurance Company, Limited, a Swiss corporation doing business in this country, against the Alien Property Custodian and the Treasurer of the United States, to recover possession of certain of its assets, consisting of securities which it had deposited in this country as required by law, and which

had been seized by the Custodian in November, 1918; the ground of the seizure being that the company, although incorporated in Switzerland, was also doing business within German territory, and therefore was an enemy, as defined by the act. The plaintiff admitted that it had been engaged in business in Germany at the time of the seizure, but alleged that it had since withdrawn from that country and was no longer doing business therein. The plaintiff claimed that because of that fact, and also because the war had been officially declared at an end, there remained no justification for the retention of its property by the Custodian, and that in equity and under the law as amended it was entitled to recover the possession thereof, and it prayed for suitable relief.

A motion to dismiss the bill was filed by the defendants upon the ground that the bill failed to aver that the corporation, at the time of the seizure and at present, was entirely owned by subjects or citizens of neutral countries. The defendants contended that the omission of that averment was fatal to the bill. The court sustained the motion and dismissed the bill, from which decision the plaintiff appealed.

The plaintiff based its right to a recovery upon three grounds, to wit: First, that no reason existed for the retention of the property by the Custodian, in view of the fact that the war with Germany had been officially declared at an end; second, that the enemy status of the plaintiff had ceased when it discontinued its business within enemy territory, and accordingly that it was entitled to recover as a nonenemy under section 9 (a) of the act as amended; and, third, that it was entitled to recover as a citizen of a neutral country under the provisions of section 9 (b) of the act as amended.

[1-3] We answer these claims as follows: It is certain that the sequestration of the property in question was authorized by the act. Under section 2 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½aa) the plaintiff was an enemy, since it was doing business within enemy territory, and under section 7c (section 3115½d) enemy-owned property was made liable to seizure by the Custodian. It is equally certain that no subsequent change in the situation of the plaintiff could relieve the sequestered property from its status as enemy-owned property. Otherwise the law could not have been administered effectively. It would have been useless to seize enemy-owned property, if the owner could recover it immediately by the simple expedient of changing his residence or his place of business. It is also certain that Congress did not intend that the official termination of the war should ipso facto entitle the owners of sequestered property to recover the same from the Custodian. Section 12 of the act (section 3115½ff) reads in part as follows:

"After the end of the war any claim of an enemy or of an ally of enemy to any money or other property received and held by the Alien Property Custodian or deposited in the United States Treasury, shall be settled as Congress shall direct."

The act unmistakably discloses that Congress intended the Custodian to retain possession of the sequestered property after the end of the war, until the final disposition thereof should be determined by future

legislation. These conclusions negative all of the claims presented by the plaintiff, except that made under section 9 (b) of the amendment of June 5, 1920. That enactment provided that the owners of property thus sequestered should be entitled to recover possession thereof from the Custodian, if at the time of the sequestration and also of the demand therefor, they answered to certain descriptions, among which were the following, to wit:

"(1) A citizen or subject of any nation or State or free city other than Germany or Austria or Hungary or Austria-Hungary, and is at the time of the return of such money or other property hereunder a citizen or subject of any such nation or state or free city; or

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"(6) A partnership, association, or other unincorporated body of individuals outside the United States, or a corporation incorporated within any country other than the United States, and was entirely owned at such time by subjects or citizens of nations, states, or free cities other than Germany or Austria or Hungary or Austria-Hungary and is so owned at the time of the return of its money or other property hereunder. \*   \*   \* "

[4] The plaintiff claims the right to a recovery herein under subsection (1), supra, upon the ground that it always was and still is a "citizen" of a neutral country, to wit, Switzerland. The defendants, however, contend that the word "citizen," as used in the subsection, was not intended by Congress to include corporations, but only natural persons. We think that the word "citizen" would ordinarily include corporations as well as natural persons, but in subsection (6), supra, Congress deals specifically with corporations for the purposes of the amendment, and thereby indicates that the first subsection was not intended to apply to them.

[5] The two subsections in question are cognate provisions of the same enactment, and should be construed together. It is elementary that, where there is in an act a specific provision relating to a particular subject, that provision must govern in respect to the subject as against general provisions in other parts of the act, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates. Endlich, Interpretation of Statutes, § 216. This rule sustains the foregoing conclusions, since subsection (6) treats of corporations in particular, whereas subsection (1) treats of citizens in general.

[6, 7] Another rule of statutory construction, which tends to sustain this interpretation, is to be found in the maxim, "Expressio unius est exclusio alterius," for according to that rule the provision in subsection (6) for a restricted class of corporations would impliedly exclude therefrom all corporations of an opposite character. Furthermore, under the plaintiff's interpretation, subsection (6) would be denied any force or effect as part of the act, for, if all corporations belonging to neutral countries are to be governed by subsection (1) as "citizens" of such countries, there remains none for subsection (6) to govern or refer to. The plaintiff undertakes to answer this view by the following statement:

"There were corporations in Germany all the property of which and all the stock of which was owned by citizens of the United States and citizens

of countries with which the United States was not at war. Subsection 6 was intended to reach these organizations."

We cannot accept this interpretation of subsection (6). It may be possible that there existed some German corporations all the stockholders of which were citizens of the United States or of neutral countries, although we are without authority upon that subject. It does not appear, however, that such corporations, if any existed, were among the claimants whose property had been seized by the Custodian, and who were seeking a return thereof. They are nowhere mentioned in the official reports or correspondence relating to the enactment, which will be referred to later herein. Such corporations, if any existed, would have been German citizens or subjects, and accordingly enemies under the primary purpose of the act. That purpose was to prevent the transmission of money or property from this country into enemy countries, where it would serve to increase the resources of the enemy. Such a purpose would be defeated if a German corporation were permitted to recover its money or property from this country and remove it into Germany, whether the stockholders thereof were citizens of Germany or of neutral countries; for in either event the resources of an enemy country would thereby be increased. The effect of such a provision would be magnified by the fact that subsection (6) includes partnerships, associations, and other unincorporated bodies of individuals outside the United States within the same class as corporations for the purposes of the subsection. The contention of the plaintiff, therefore, must necessarily apply to the former classes, also, which adds confirmation to the decision herein reached. It may be noted that at the time when the amendment was enacted a technical state of war still existed between this country and Germany, and the provisions of the amendment clearly show that it was not intended by Congress to abandon the elementary purposes of the act.

We conclude accordingly that the favor of the amendment was not extended to corporations incorporated in countries other than the United States, the capital stock of which was owned in whole or in part by subjects or citizens of Germany. This conclusion has the effect, of course, of excluding the plaintiff from the benefit of the amendment, since it is not denied that it was owned in part at least by citizens of Germany.

Various public letters and statements issued during the preparation and passage of the amendment, emanating from the Attorney General, the Secretary of State, and from members of Congress in contact with the bill, have been cited in support of the plaintiff's contention. These, however, relate to the general intent of the amendment rather than to the particular provision now in question. In a letter, however, to the chairman of the House committee on interstate and foreign commerce, written by the Attorney General, transmitting a draft of the proposed amendment, the latter in part said:

"Under subsection (1), thereof will be permitted the return of property to all American citizens wherever resident, to citizens of Turkey and Bulgaria, and to persons whose property was sequestered because of the fact that they were doing business within enemy territory (provided they are not citizens of enemy countries)."

[8] The proviso last mentioned seems to be in line with subsection (6) as interpreted by the defendants, for the latter results in preventing a return of property to corporations whose real owners, the stockholders, are, whether entirely or in part, citizens of enemy countries. However, we may say that the interpretation of paragraph (6) seems to us to be sufficiently clear to make it unnecessary to rely for assistance upon cotemporaneous documents. On the other hand, there is nothing unreasonable in the result which would follow from the adoption of the defendants' interpretation. It may well be said that the stockholders of a foreign corporation are virtually the corporation itself for the purposes of the act, and that if they are enemies the corporation should be regarded as such. It is true that the provision as thus interpreted has the result of classifying a corporation as an enemy, even if only one stockholder out of many should be an enemy, and this may be said to be a drastic rule. But it would be difficult in practice to draw any other dividing line in such cases. Furthermore, the President was empowered by the act to license corporations of this kind when he saw fit, and thereby prevent a seizure of their assets under the act. Sections 4 and 5 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115½bb, 3115½c).

It is suggested in behalf of the plaintiff that under the phraseology of the act Congress in appropriate cases designated the corporations as alien enemies or otherwise, according to their own nationality and not that of their stockholders. It may be noted, however, that corporate stock in domestic corporations, when held by enemies, was seized by the Custodian like other property, and there is no reason to doubt that stock similarly held in foreign corporations would likewise have been seized, if found in this country and capable of being reduced to possession.

[9] It may be added that, when the United States permits a suitor to sue it in its courts, the case brought cannot be sustained, unless both in form and substance it comes within the terms of the consent.

Affirmed, with costs.

ROBB, Associate Justice (dissenting). The result in this case very largely depends upon whether this remedial legislation shall be liberally or narrowly interpreted. In section 2 (c) of the original Act of October 6, 1917, it is provided that the word "person" shall include corporations, and a reading of the act and the amendment leaves little room for doubt that the word "citizen" likewise was intended to include and does include corporations. It follows, therefore, that under subsection (1) of section 9 (b) of the amendatory Act of June 5, 1920, the Swiss National Insurance Company, appellant here, is brought within the scope of this remedial legislation.

I see nothing inconsistent with this view in the provisions of subsection (6). Under that subsection a German or Austrian corporation, whose stock was entirely owned by citizens of other countries, is brought within the provisions of the act. It is plain that such corporations would not be within the provisions of subsection (1). Subsection (6), therefore, like the other subsections of section 9, was intended

to broaden rather than narrow the scope of the act. In other words, its intent was to add, and not to exclude, a class.

Under the view of the majority, a Swiss corporation with a capital stock of $1,000,000 would be excluded from the benefit of the act, if one share of its stock happened to be owned by a German citizen. Such a result could not have been contemplated by Congress, and I do not think this legislation need be given an interpretation that would make it possible.

Believing that appellant, as a citizen of Switzerland, is entitled to the benefit of this act, I am constrained to dissent from the opinion and judgment of the court.

Petition for appeal to the Supreme Court of the United States granted July 11, 1923.