W. Stanley Brown and Daniel E. Finn, Jr., Plaintiffs, v. J. P. Morgan & Co., Incorporated, Defendant.

Supreme Court, Special Term, New York County, December 22, 1941.

*Paul E. Kern [William V. Hagendorn* of counsel], for the plaintiffs.

*Davis, Polk, Wardwell, Gardiner & Reed [Russel S. Coutant* of counsel], for the defendant.

Eder, J. Motion to stay entry of judgment. This was a statutory suit brought in aid of an attachment and a levy made thereunder. The plaintiffs herein, by decision of this court, were awarded a judgment against the defendant giving possession to the sheriff of New York county of certain funds belonging to Credit Consortium for Public Works of Italy, an Italian national, which funds were theretofore attached by the sheriff and which were in the possession of the defendant; the decision further directed

that the sheriff apply said property to the satisfaction of any judgment which the plaintiff Brown may obtain in the attachment action. (*Brown* v. *Morgan & Co., Inc.*, 177 Misc. 626.)

Counsel for the respective parties submitted a proposed form of judgment. In the form originally proposed by the defendant there was incorporated therein a provision to the effect that the defendant be directed to deliver possession of said moneys to the sheriff, subject to license from the Secretary of the Treasury of the United States under Executive Order No. 8389, as amended by Executive Order No. 8785. This Executive Order was considered *in extenso* and construed and interpreted in the mentioned opinion of this court and needs no further discussion or elaboration here. The defendant having been found at fault, and this court having held that the duty rested on the defendant, in the first instance, to make application to the Secretary of the Treasury for a license to pay over these moneys to the sheriff, the inclusion of this suggested provision in the judgment would have been refused as merely adding unwarranted delay to the right of the plaintiffs to obtain the fruits and benefits of a favorable decision and successful conclusion of the litigation.

These proposed judgments were prepared and submitted to this court before the news of the declaration of war with Italy was made public. Due to the existence of a state of war with Italy a situation has arisen by reason of which the defendant finds itself in a predicament as respects compliance with the decision of this court and any judgment that may be entered thereon and now moves that the entry of judgment herein directing the delivery of possession of the moneys held by this court to be the property of Italian Credit Consortium be stayed, and for such other and further relief as to this court may seem just and proper.

The dilemma of the defendant appears to be this, that if it complies with the judgment of this court it may result in such act constituting a violation of the provisions of the Trading with the Enemy Act (40 U. S. Stat. at Large, 411; U. S. Code Ann. tit. 50, Appendix, pp. 189–311), while failure to comply with the judgment of this court may subject the defendant to punishment for contempt. Hence it is that it seeks to emerge from the quandary by staying the entry of judgment.

The situation which has developed as the result of the declaration of a state of war with Italy necessitates a clarification so that the rights of the successful plaintiffs may not be prejudiced or jeopardized and the recovery against the defendant rendered futile, at the same time giving due concern to the difficulties and problems which now beset and burden the defendant, who, apparently,

wishes to comply in good faith with the decision of this court, if it is possible to do so without incurring or subjecting itself to any risk, in consequence.

The purpose of the Trading with the Enemy Act is akin to that underlying the so-called "freezing" order promulgated by the President, i. e., to harness all assets and property in this country belonging to enemy nations and their nationals, thus to prevent the possession, utilization and disposal thereof by such hostile powers and their nationals. (*Banco Mexicano de Commercio de Industria* v. *Deutsche Bank,* 289 Fed. 924, 927; affd., 263 U. S. 591; *Swiss Nat. Ins. Co.* v. *Miller,* 289 Fed. 571; affd., 267 U. S. 42; *American Exch. Nat. Bank* v. *Palmer,* 256 Fed. 680, 685; *Brown* v. *Morgan & Co., Inc., supra.*)

As to this motion I consider section 3 (a), section 6 and section 7 (a) and (b) of the Trading with the Enemy Act as germane, and I shall set forth the pertinent portions thereof. Section 3 (a), entitled "Acts prohibited," declares: "That it shall be unlawful — (a) For any person in the United States, except with the license of the President, granted to such person, or to the enemy, or ally of enemy, as provided in this Act, to trade, or attempt to trade, either directly or indirectly, with, to, or from, or for, or on account of, or on behalf of, or for the benefit of, any other person, with knowledge or reasonable cause to believe that such other person is an enemy or ally of enemy, or is conducting or taking part in such trade, directly or indirectly, for, or on account of, or on behalf of, or for the benefit of, an enemy or ally of enemy."

Section 6 of the act provides: "That the President is authorized to appoint, prescribe the duties of, and fix the salary * * * of an official to be known as the alien property custodian, who shall be empowered to receive all money and property in the United States due or belonging to an enemy, or ally of enemy, which may be paid, conveyed, transferred, assigned or delivered to said custodian under the provisions of this Act; and to hold, administer, and account for the same under the general direction of the President and as provided in this Act."

Section 7 (a) provides: "* * *. Any person in the United States who holds or has or shall hold or have custody or control of any property * * * of * * * an enemy * * * shall, with such exceptions and under such rules and regulations as the President shall prescribe, and within thirty days after the passage of this Act, or within thirty days after such property shall come within his custody or control, * * * report the fact to the alien-property custodian * * *."

Section 7 (b) provides: "Nothing in this Act shall be deemed to prevent payment of money belonging or owing to an enemy or ally of enemy to a person within the United States not an enemy or ally of enemy, for the benefit of such person or of any other person within the United States, not an enemy or ally of enemy, if the funds so paid shall have been received prior to the beginning of the war and such payments arise out of transactions entered into prior to the beginning of the war, and not in contemplation thereof: *Provided*, That such payment shall not be made without the license of the President, general or special, as provided in this Act."

In so far as the office of Alien Property Custodian is concerned, it ceased on July 1, 1934; his powers and duties were transferred to the Department of Justice; all moneys and property held by or in trust for him were transferred to the Attorney-General who is successor to the Alien Property Custodian (*Cummings* v. *Deutsche Bank*, 300 U. S. 115, 117); matters in the Alien Property Custodian's office are now handled by the Claims Division of the Department of Justice; it appears that a new division is being organized to be known as "Alien Property Division" which will deal with patents and other property of Axis nationals and that the duties and functions of the head of this division will be similar to those exercised by the office of Alien Property Custodian during the last war. (See War Law Service, Report No. 128, Dec. 12, 1941, C. C. H.) Regarding the operation of the Trading with the Enemy Act, provisions of this act have already been invoked by the Treasury Department to prevent all trade with the enemy. (See Treasury Department releases.)

In the instant case I held, in construing and interpreting Executive Order No. 8389, that it was not the intent thereof to interfere with or to interrupt the normal and orderly administration of justice, applying the rule of sensible construction, and the same rule of construction is applicable to the Trading with the Enemy Act.

In the case at bar the respective parties are American citizens; the payment to the sheriff of the attached funds belonging to Italian Credit Consortium would be in aid of a suit and judgment obtained by an American citizen against an alien enemy; the application of the attached moneys to the satisfaction of such a judgment would render no aid to such alien enemy. But be that as it may, the most that can be said in relation to the instant situation is that the act suspends enforcement of the judgment until license of the President is obtained to make such payment. Section 2, entitled "Definitions," declares: "The words 'to trade,'

as used herein, shall be deemed to mean — (a) Pay, satisfy, compromise, or give security for the payment or satisfaction of any debt or obligation." It has been decided that a fund held by an American national for the benefit of an alien enemy is included within the statute (*Second Russian Ins. Co.* v. *Miller*, 268 U. S. 552, affg. 297 Fed. 404), and the fund here attached and held by the defendant, therefore, comes within the act. The situation described in section 7 (b) is present here.

All the cases examined by this court involved specific property delivered to the Alien Property Custodian, or that had been seized or claimed by him. In the case at bar no property has been reported by the defendant to the Attorney-General as successor to the Alien Property Custodian, or delivered to or claimed or seized by him; all that exists here, at the moment, is a state of apprehension on the part of the defendant, an anxiety, from which it seeks relief through staying entry of judgment herein.

I see no reason, in justice, why plaintiffs should not be permitted to reduce the decision of this court to entry of a formal judgment thereon since it is the judgment of the court and not its decision that is the ultimate instrument adjudicating and determining the issues, rights, interests and status of the parties. From that point on another question may arise with respect to the enforcement of the judgment when the application of the act and the extent of its effect may come into being. Here, however, the primary question before the court is not the enforcement of the judgment but merely the entry thereof — to reduce the decision of the court to a judicial and conclusive finality, giving it vitality and effect by welding it into a living force, in the form of a judgment.

It is clear that the purpose of the Trading with the Enemy Act is to sequester or impound, under government control, the property of alien enemies, both of the sovereignties and their nationals, so that it may not be employed in the interests of any enemy government and against the interests of our own nation, and, therefore, I am unable to see that the object and purpose of this statute will be impaired, defeated or in any manner obstructed or frustrated by permitting the action herein to be prosecuted to final judgment in the State court; neither the letter nor the spirit of the statute intimates any prohibition against the prosecution of a suit to final judgment in a State court even though it concerns or involves the property of an alien enemy. (See *Insurance Co. of Penn.* v. *Prussian Nat. Ins. Co.*, 112 Misc. 199.)

The provisions of the Trading with the Enemy Act are, of course, to be regarded and considered as in the nature of a general caveat and the court will take judicial notice thereof (*Munich Reinsurance*

*Co.* v. *First Reinsurance Co.*, 6 F. [2d] 742; appeal dismissed, 273 U. S. 666); and it is the duty of the court to so mould its decree, and its provisions and enforcement, as not to conflict with the Federal enactment but to co-operate to carry out and effectuate the object, purpose and scope thereof, at the same time relieving the defendant from any embarrassment or peril which might attend its compliance with the decree of this court through the possible offending of the Federal statute as the result of such compliance, yet, withal, protecting and preserving to the successful party the benefits and fruits of recovery.

Therefore, under the unusual circumstances existing, the disposition of this application will be as follows: The motion of the defendant to stay the entry of judgment herein is denied; but the judgment to be entered will contain a provision that the defendant is directed to deliver possession of said moneys to the sheriff, "subject to license under the Trading with the Enemy Act." Thus the defendant is relieved of its apprehension and peril, and plaintiffs at the same time obtain a definite and final adjudication and determination herein, sustaining no prejudice, since the Trading with the Enemy Act affords opportunity to plaintiffs to obtain possession of the fund in question. (See §§ 9, 17.) The motion is disposed of as indicated.