In the Matter of the Estate of FILIPPO CASSOLA, Deceased.

Surrogate's Court, New York County, January 27, 1944.

*Joseph A. Cox* for James F. Egan, Public Administrator of the County of New York, petitioner.

*Francis L. Valente* for Columbus Hospital, Inc., respondent.

*Warren E. Schenck* for Vincenza Marandino, respondent.

*James L. Duncanson* and *Charles F. Fish,* attorneys designated by Alien Property Custodian to represent Paule Cassola and others, persons within designated enemy territory, respondents.

*Eustace G. Marandino* in person, respondent.

*Nathaniel L. Goldstein, Attorney-General (Harry F. Karst* of counsel), for unknown heirs.

*Paul G. Reilly,* special guardian for Paule Cassola and others, infants.

DELEHANTY, S. In this accounting proceeding the Swiss Consul General undertook to interpose objections in behalf of nonresident Italian enemies alleged to be interested as distributees in the estate of deceased. Its claim of right so to interpose objections is based apparently upon the fact that the Italian Government · with which this country was at war at the time of interposition of objections had committed to the Swiss authorities under international practice the protection of the interests of Italian citizens. The war had rendered inoperative the treaty between this country and Italy. It was no longer possible for any agency of the Italian Government to interpose in our courts in behalf of Italian citizens resident in Italy. The Italian Government could not burke the effect of its declaration of war upon this country by committing the protection of its citizens to a government with which this country was at peace. It could not act by deputy when it could not act in its proper person. Accordingly the court struck out the objections of the Swiss Consul.

An answer interposed by Vincenza Marandino alleged a claim of ten thousand dollars against the estate, based upon an alleged oral promise of deceased that " he would provide for " (claimant) " receiving at least one-fifth (1/5) of his residuary estate which would not amount to less than Ten thousand ($10,000.00) Dollars ". An objection interposed by Eustace G. Marandino sought allowance of his claim for funeral expenses. An answer interposed by the Alien Property Cus-

todian put in issue the claim of Vincenza Marandino. Objections to the account interposed by the Alien Property Custodian challenged the validity of a claim of Columbus Hospital, Inc., to the net estate of deceased under an alleged gift *causa mortis*. The special guardian also challenged the claim of Vincenza Marandino and asked proof of the claim of Eustace G. Marandino and that of Columbus Hospital, Inc.

The petition proposed the deposit of the eventually ascertained balance of the estate with the City Treasurer for the benefit of unknown distributees. Originally the Alien Property Custodian sought to have the identity of the distributees determined . here and now but has withdrawn that request. No proof having been submitted as to the identity of distributees and none being procurable until access to Italian records is possible, the court will order the fund representing the balance in the estate deposited as requested by the Public Administrator.

The Public Administrator, by petition, sought approval of the court of a proposal for settling the liability of the estate upon a mortgage bond. By resettled interim order dated July 30, 1943, the adjustment proposed in respect of this mortgage-bond liability was approved and the Public Administrator authorized to deliver a quitclaim deed of the property upon which the mortgage was a lien. Such order authorized the payment of a sum in cash in addition. No party in interest makes objection to that disposition.

The petition asked leave to settle the claim of gift *causa mortis* interposed by Columbus Hospital, Inc. This claim and the proposed settlement thereof having been opposed by the Alien Property Custodian, an order was made on the consent of the parties for a jury trial of such claim. The issue so to be tried was formulated by order of the court. Some rulings made during the course of the trial required a restatement of the issue as thus formulated and the court, pursuant to the power resident in it, formulated at the close of the testimony two questions for submission to the jury. The form of these questions was acceptable to the parties in interest. To the questions so formulated the jury in each instance answered " Yes ". The court is of the view that the evidence presented to the jury amply sustains the answers made. Hence it adopts the jury verdict in respect of each question submitted. On the basis of the jury findings of fact so adopted by the court, it adjudges that deceased made a valid gift *causa mortis* to Columbus Hospital, Inc., (a) of cash in the sum of $30,799,

(b) of four $1,000 bonds, City of Milan, External Loan of 1927 sinking fund 6½%, due April 1, 1942, and (c) of his library, professional instruments and furnishings located at 33 West 70th Street, Manhattan, New York City.

Some rulings in the course of the jury trial require brief comment. The attorney for deceased was called as a witness for the claimant. Objection to his testimony was taken under section 353 of the Civil Practice Act. The issue here had nothing to do with any will or with the construction of any instrument affecting a will. In consequence the exception contained in section 354 of the Civil Practice Act is not applicable. The communication sought to be proved was a confidential one arising from the relationship of attorney and client and hence within the prohibition of section 353 of the Civil Practice Act. Hence the proffered testimony was excluded. A more important question arose respecting the type of property subject to symbolic delivery. The jury's verdict imported that they had found that deceased delivered to a representative of Columbus Hospital, Inc., the keys to his house, to his bedroom therein and to a desk and a locked cabinet in the bedroom. In the locked cabinet were the cash and the city of Milan bonds. In the house were the library, the professional instruments and the furnishings. In the bedroom there was a desk in the drawer of which were some deposit books issued by commercial banks and a broker's monthly report to deceased. This report indicated that at the end of January, 1942, there was a cash balance in the hands of the broker due to deceased and it indicated also that the broker had for account of deceased a long list of unencumbered securities. The order for jury trial of the claim of gift listed the cash balances in the banks and the securities and cash balance so described in the broker's statement as part of the subject matter of gift to be passed on by the jury.

The evidence presented to the court the legal question whether or not a credit in a commercial bank and a credit in a broker's hands and securities in the latter's hands could be transferred by delivery of keys which gave access to the place where the bankbooks and the broker's statement were kept by deceased. It is familiar law that the rules of savings banks make possession of a savings bankbook intrinsic evidence of the right to the credit in the savings bank, and conversely that possession of a bank deposit book used by commercial banks to record deposits has no such intrinsic quality. There is no reason to differentiate between a credit in a broker's hands

and that in a commercial bank. There is no custom and no business practice which makes a broker's statement the equivalent of the property referred to in the statement. As between the customer and the broker the statement may constitute an admission in favor of the customer in an action against the broker or it may have some value as between the broker and the customer in establishing the truth of their respective claims. The statement has no validity as a negotiable instrument and its mere possession furnishes to a third party no evidence of his title to the property listed thereon.

There are many cases which deal with the question when a gift may be made other than by delivery of the *res* itself. A valuable discussion is found in *Brophy* v. *Haeberle* (220 App. Div. 511), where it was held that an attempted gift of a balance in a commercial bank could not be effected by the delivery of the deposit book. The rule in the Restatement of the Law of Contracts (§ 158) is vigorously criticized by Professor Paul W. Bruton in 39 Yale Law Journal 837. Professor Williston, who was the reporter for the Restatement, made, as might be assumed, an entirely adequate defense of the rule and of the reasons for it when he answered Professor Bruton in an article published in 40 Yale Law Journal 1. No discussion by this court would add anything to what has been said in these two law journal articles. The court believes that the operative area of gifts should not be extended so as to make the delivery of papers or instruments (which constitute merely evidence of some right in the deceased donor) the equivalent of delivery of the valuables to which they refer. Since the court expressed this view at the trial, it withdrew from jury consideration the question whether a gift had been made of the cash balances in the commercial banks and in the broker's hands and of the securities which were listed on the broker's statement found in the desk of deceased.

The claim of Vincenza Marandino has not been proved. All that has been said by witnesses about deceased's statements falls far short of establishing any contract liability on his part. Trial judges are cautioned to scrutinize with great care reports of statements of persons now dead and are told to act on them only if they show clearly and convincingly an intention of the deceased to assume an obligation. No such clear and convincing proof was furnished this court. The court excluded the testimony of Mr. Eustace G. Marandino which was tendered in support of the claim. That exclusion was based upon the rule in *Rosseau* v. *Rouss* (180 N. Y. 116), which

appears to have been approved in *Croker* v. *New York Trust Co.* (245 N. Y. 17) and *Matter of Browning* (280 N. Y. 584, affg. 255 App. Div. 764, which affirmed this court's decision reported in 165 Misc. 675). In *Rosseau* v. *Rouss* (*supra*) the beneficiary of the alleged promise of a deceased promisor was a child whose mother testified to the making of a bargain with deceased for the benefit of her child. The reception of that proof was held to be error. In *Croker* v. *New York Trust Co.* (*supra*) the deceased promisor is alleged to have made a bargain with one of his sons for the benefit of another son and a daughter of the promisor. While saying that it would not rule on the precise question here of importance (the judgment was reversed on other grounds), the court said: "The general rule remains, that when a third person sues on a contract made for his benefit he derives his interest from the party who furnishes the consideration for the contract. * * * Under this rule, plaintiff, promisee, was clearly incompetent to testify to personal transactions with the deceased promisor for the benefit of the third party beneficiaries." The decision in the *Croker* case contains text which may have intended to reserve the question whether the rule in *Rosseau* v. *Rouss* would be enforced. The Court of Appeals appears to have definitely enforced that rule in *Matter of Browning* (*supra*). There the parents of a child about to be adopted by the wife of a deceased promisor were excluded as witnesses to a bargain alleged to have been made by them with the deceased for the benefit of their child as a consideration for their consent to the adoption. This court cited *Rosseau* v. *Rouss* (*supra*) and *Croker* v. *New York Trust Co.* (*supra*) as the basis to its ruling excluding the proffered evidence. The report prepared by the State Reporter from the appeal papers in the *Browning* case shows that the question was before the Court of Appeals on the precise point here relevant. Exclusion of the testimony of the parents would clearly have required a reversal if the application of the rule made by this court had not been approved. It follows from the cited cases that the exclusion of the testimony of Eustace G. Marandino (said to have bargained for his mother's benefit with deceased) was proper under section 347 of the Civil Practice Act. Accordingly the claim of Vincenza Marandino is dismissed on the merits.

The claim of Eustace G. Marandino for reimbursement of funeral expenses is allowed. The amount expended is substantial but when the total of deceased's estate is taken into account and his standing in the community as a professional

man is considered, the amount of the funeral expense does not exceed the permissible. The court is constrained to recognize the fact that with many of our racial groups social custom dictates expenditures for the interment of the dead, though in a very high proportion of instances much of the moneys so used could be more usefully applied to the support of the living. The waste is one which can be corrected only by a change in the social customs of the community.

These rulings dispose of all matters in issue. A final comment is needed however on the disposition of the proceeding. The representations made by the Swiss Legation to the Secretary of State urged that no disposition be made of the estate affairs until the conclusion of the war and until the parties alleged to be distributees of deceased might attend in person or by representative of their choice and be heard on the respective issues. It was apparent, however, to the court that the distributees could have no knowledge about the funeral expense, could have no knowledge about the claim of Mrs. Marandino, could give the court no light on the problem presented by deceased's liability on the mortgage bond and had no information respecting the claim of gift made by Columbus Hospital, Inc. The interests of these alleged distributees were vigorously represented by the Alien Property Custodian. Some of them were represented in addition by the special guardian appointed by the court. The protection of the estate generally was in the hands of the Public Administrator whose counsel was fully alive to his obligation to protect the estate and who discharged his obligation fully. It is desirable for many reasons that estate administrations should proceed to finality in regular course unless substantial reason to the contrary arises because of war conditions. Here no substantial reason existed for delay. The court felt obliged to proceed with the settlement of the estate and is confident that the rights, if any, of the alien enemies of this country have been fully protected.

Submit, on notice, decree in accordance herewith.