**POLAROID CORPORATION et al. v. MARKHAM, Alien Property Custodian, et al.**

No. 8854.

United States Court of Appeals District of Columbia.

Argued Jan. 25, 1945.

Decided Feb. 19, 1945.

Mr. Donald L. Brown, of the Bar of the Court of Appeals of New York, of New York City, pro hac vice, by special leave of court, with whom Messrs. Cecil A. Beasley, Jr., of Washington, D. C., and Nathaniel R. French, of Cambridge, Mass., were on the brief, for appellants.

Mr. Irving J. Levy, Chief Trial Attorney, Department of Justice, of Washington, D. C., with whom Messrs. Harry LeRoy Jones, Chief, Alien Property Litigation Unit, of Washington, D. C., and B. F. Garvey, Special Assistant to the Attorney General, were on the brief, for appellee Alien Property Custodian.

Messrs. W. W. Cochran, Solicitor, United States Patent Office, and E. L. Reynolds, United States Patent Office, both of Washington, D. C., entered appearances for appellee Commissioner of Patents.

Before GRONER, Chief Justice, and EDGERTON and ARNOLD, Associate Justices.

GRONER, C. J.

The case is before us now on motion of the Alien Property Custodian, one of appellees, to dismiss for lack of jurisdiction in this court and likewise in the District Court on the ground that this is a suit against the United States and the United States have not consented to be sued. Briefly, the facts are these:

In June, 1940, Robert A. Smith, assignor of Polaroid Corporation (one of appellants), filed in the Patent Office an application for letters patent on an invention. One of Smith's claims paralleled in all respects the claim of one Sauer, a German national, who had previously applied for and obtained a patent thereon. In September, 1940, the Commissioner of Patents declared an interference between Smith's application and the patent of Sauer. In August, 1942, the Alien Property Custodian, acting under the authority of the Trading with the Enemy Act as amended,[1] issued an order vesting in himself the Sauer patent; and thereupon intervened in the place of Sauer in the Patent Office proceedings. The Board of Interference Examiners in April, 1943, awarded priority of invention to Sauer. Thereafter, Smith petitioned for reconsideration and the Alien Property Custodian filed a memorandum in opposition. Upon reconsideration the original decision was amplified and adhered to, and Smith's application was denied. No appeal to the Court of Customs and Patent Appeals was taken, but Polaroid, a Delaware

---

[1] 40 Stat. 411 (1917), 50 U.S.C.A.Appendix § 1 et seq.

corporation, and its assignor Smith, a citizen of the United States, commenced an R. S. § 4915 proceeding[2] in the District Court against the Commissioner of Patents, and named the Alien Property Custodian a party defendant. The Commissioner and the Custodian answered the complaint on the merits and the parties stipulated that the proceedings in the Patent Office should be admitted in evidence as a part of the record. Upon hearing and submission of the case, Judge O'Donoghue, after finding the facts, concluded as a matter of law that the plaintiff Smith was not the true, original and first inventor of the invention forming the subject matter of the claim, and the suit was dismissed. On appeal to this court the parties, including the Alien Property Custodian, stipulated as to the record and as to the filing of briefs, but before we reached the case for hearing the Custodian moved that the appeal be dismissed for the reasons stated in the forepart of this opinion.

The basis of the motion is that Congress, in Section 9(a) of the Trading with the Enemy Act, has conferred jurisdiction in a certain class of suits against the Alien Property Custodian, and by § 7(c) has restricted suits against the Custodian to cases specifically permitted by the Act.[3] And from this it is argued that since the present suit is not brought under that Act, it may not be maintained. Yet we are also told by counsel for the Custodian that it is conceded that Polaroid does not attack the Custodian's title to the Sauer patent, or claim any title or interest in that patent, but merely seeks in a 4915 suit to establish a device of its own as a prior invention and thus indirectly to challenge the validity of the Sauer patent. And this we think is a correct statement.

An examination of the many cases involving seized enemy patents arising out of World War I and out of this war discloses that the question whether a suit of this nature may be maintained against the Custodian is new,[3a] but, upon consideration, we have concluded that the motion to dismiss should be denied. In reaching this result we are not unmindful of decisions of the Supreme Court, holding that upon seizure by the Custodian of enemy property, absolute title to the same vests in the United States, wholly subject to the will of Congress as to its ultimate disposition;[4] nor are we unmindful of the prohibition in the Trading with the Enemy Act that no claim for the recovery of or redemption from seizure of property, as enemy property, is maintainable except as expressly provided therein.[5] And of course it is conceded that Congress in time of war may authorize the seizure of any property believed to be enemy owned, "if adequate provision be made for return in case of mistake."[6] Equally, it is conceded that Congress has made such provision in § 9 of the Act. Accordingly, if Polaroid were here claiming any right or title in the Sauer patent, we assume that its suit to recover possession would be permissible under the precise language of the Act. But that, as the Custodian insists, and as we agree, is not this case. Here the suit is not to recover property or money in the possession of the Custodian, nor to take from the Custodian any property or rights seized or acquired by him.[7] Rather, it is an effort on the part of Polaroid to invoke in the protection of *its* rights the statutory remedies provided by the Patent Laws, which commence in the Patent Office and may be re-activated by an R.S. § 4915 proceeding to enable one having rights as a prior inventor to have the same officially recognized and declared.[8] Clearly, the United States under R.S. § 4915 have consented to be sued in

---

[2] 35 U.S.C.A. § 63.

[3] 50 U.S.C.A.Appendix §§ 7(c), 9(a).

[3a] Doubtless there have been other cases in which existed the same or similar fact situations, see Mathieson Alkali Works v. Crowley, 78 U.S.App.D.C. 163, 138 F.2d 281, but apparently, until now, the question has not been raised.

[4] United States v. Chemical Foundation, 272 U.S. 1, 12, 47 S.Ct. 1, 71 L.Ed. 131; Cummings v. Deutsche Bank und Disconto-Gesellschaft, 300 U.S. 115, 120, 121, 57 S.Ct. 359, 81 L.Ed. 545.

[5] 50 U.S.C.A.Appendix § 7(c); Stoehr v. Wallace, 255 U.S. 239, 243, 41 S.Ct. 293, 65 L.Ed. 604; Central Union Trust Co. v. Garvan, 254 U.S. 554, 568, 41 S.Ct. 214, 65 L.Ed. 403; Crone v. Sutherland, 62 App.D.C. 16, 63 F.2d 895; Von Bruning v. Sutherland, 58 App.D.C. 258, 29 F.2d 631.

[6] Stoehr v. Wallace, 255 U.S. 239, 245, 41 S.Ct. 293, 65 L.Ed. 604; Kahn v. Garvan, D.C., 263 F. 909, 912.

[7] Cf. Chemical Foundation, Inc. v. General Aniline Works, 3 Cir., 99 F.2d 276, concurring opinion, at pages 277, 279, certiorari denied, 305 U.S. 654, 59 S.Ct. 249, 83 L.Ed. 423.

[8] Owen v. Heimann, 56 App.D.C. 232, 12 F.2d 173, certiorari denied, 271 U.S. 685, 46 S.Ct. 637, 70 L.Ed. 1150.

a proceeding directed against the Commissioner to that end. Hence, if the suit is continued and if it is finally decided that Polaroid is entitled to its claim, the result would be a court decree authorizing the Commissioner to grant the patent, and to that extent would be a finding that Polaroid's assignor Smith was, and Sauer was not, the first inventor. But this would not *ipso facto* result in the cancellation of the Sauer patent or its surrender by the Custodian.[9] Both patents, the one granted to Sauer and the one subsequently granted to Polaroid, would continue outstanding and the holders remitted to their remedy under R.S. § 4918.[10] In other words, the issues originating in the interference proceeding (in which the Custodian actively engaged) can be decided and still leave the Custodian with everything that lawfully came into his possession under the seizure or that he was authorized to take under his vesting order.[11] The Custodian's seizure, not having affected the continuation of the interference proceeding, ought not to be permitted to bar its companion [12] R.S. § 4915 proceeding.[13] In short, all that would result would be the continuation, without impairment of sovereign immunity, of the orderly processes of the law at the instance of a citizen authorized by statute to invoke them in the protection of his rights.

Two cases consistent in result with the present case are (1), Insurance Co. of Pennsylvania v. Prussian Nat. Ins. Co., 112 Misc. 199, 184 N.Y.S. 103, 105, where it was held that the Trading with the Enemy Act does not prevent action in a State court to reform a German insurance company's contract of re-insurance, notwithstanding the seizure of the insurance company by the Alien Property Custodian. There it was said that the suit was brought by an American plaintiff merely to determine the obligations of an alien enemy, and as to this the court said:

"There is nothing in the statute to indicate, and no reason to suppose, that our government intended that this act [Trading with the Enemy] should handicap its own citizens. It may be presumed that the governmental intention was to the contrary. The construction which the defendant seeks to have placed upon the statute would, however, work an injury to our own citizens by depriving them of a jurisdiction which would, in normal conditions and in times of peace, be open to them and which, for some good reason or other, they might prefer to resort to, just as the plaintiff in this case prefers to resort to the jurisdiction of the courts of this state."[14]

—and (2), the case of United States v. The Sam Leonardo, D.C., 51 F.Supp. 107, 109, where it was said:

"The Alien Property Custodian could not, however, take any greater interest in property seized than the alien enemies had, and this was recognized by the provisions of the Vesting Order. Therefore, the issues originally created by the libels for forfeiture of the ships, still remains to be decided in the above entitled actions."[15]

---

9 United States v. American Bell Tel. Co., 128 U.S. 315, 9 S.Ct. 90, 32 L.Ed. 450; United States ex rel. Baldwin Co. v. Robertson, 265 U.S. 168, 180, 44 S.Ct. 508, 68 L.Ed. 962; Knight v. Rite Shoe Co., 1 Cir., 23 F.2d 903; 2 Walker on Patents (Deller's ed.) § 253.

10 35 U.S.C.A. § 66.

11 Cf. Kahn v. Garvan, 263 F. 909, 912: "Nor, indeed, could the Alien Property Custodian under such a demand, or unless he asserted a legal right to the securities themselves, by capture change the character of the enemy's right as obligee. If it be a chose in action, subject to an accounting as a condition of its assertion, he must submit to judicial determination between himself, as captor, and the trustee as obligor. Such a demand neither enlarges nor contracts the rights seized."

12 Cf. Owen v. Heimann, 56 App.D.C. 232, 12 F.2d 173, 174: "The issuance to Owen of a patent by the Patent Office vested in him no property right, of which he could not be deprived by the interference proceedings provided for by section 4904 * * * or by the suit in equity contemplated by section 4915. * * * Every patentee takes his patent with full knowledge that his claim to priority of invention may be attacked in the manner provided by law and that if it be successfully assailed, his patent is rendered worthless * * *."

13 This is stated with a full appreciation that a bill in equity under R.S. § 4915 amounts to a *de novo* proceeding. But what we are here discussing is a complete scheme of statutory remedies and not the procedural effects given to the several steps required to avail of these remedies.

14 See also Brown v. J. P. Morgan & Co., 177 Misc. 763, 31 N.Y.S.2d 815, 820, reversed on other grounds, 265 App. Div. 631, 40 N.Y.S.2d 229.

15 See also The Pietro Campanella, D.C., 47 F.Supp. 374, 377.

To say in this case that the District Court had no jurisdiction because the Alien Property Custodian may not be joined with the Commissioner in an R.S. § 4915 proceeding, as the Custodian argues, would impose, in the circumstances of this case, a penalty which it is perfectly clear Congress never for a moment intended,[16] and would disrupt and ignore the statutory functions of the Patent Office to a degree certainly never contemplated in the passage of the Trading with the Enemy Act.

We are accordingly of opinion that when Congress authorized suits to be brought against the Commissioner of Patents to obtain a patent, it thereby consented that the United States should be sued, and that, in the case of an American applicant, this consent is not withdrawn or qualified either by the intervention of the Custodian or the necessity of making him a party defendant.

In this view it is unnecessary to decide whether another reason may be found for denial of the motion in the provisions of the Trading with the Enemy Act in respect to the powers of the Custodian in the prosecution of applications, or for the protection of enemy patent rights seized by him. Though as to this, as we have seen, the Custodian in the instant case exercised these powers when he intervened in the proceedings in the Patent Office, displaced counsel for Sauer with counsel of his own choosing, and participated as an interested party throughout those proceedings and likewise throughout the R.S. § 4915 suit which followed.

Motion denied.

---

16 Cf. United States v. The Thekla, 266 U.S. 328, 340, 341, 45 S.Ct. 112, 113, 69 L.Ed. 313: "The reasons that have prevailed against creating a government liability in tort do not apply to a case like this, and on the other hand the reasons are strong for not obstructing the application of natural justice against the Government by technical formulas when justice can be done without endangering any public interest."