In the Matter of the Estate of MARGARETHE HOHM, Deceased.

Surrogate's Court, Kings County, December 20, 1945.

*Thomas J. Snee* for Public Administrator of Kings County, petitioner.

*Topken & Farley* for William J. Topken as ancillary administrator, respondent.

McGAREY, S. The Public Administrator of Kings County seeks to revoke the ancillary letters issued to the respondent by this court in 1935.

The decedent died on January 8, 1935, a resident and citizen of Germany. The domiciliary administrator of her estate authorized and designated the respondent to apply for and receive ancillary letters to administer the assets located in this State, which were duly issued to him on August 26, 1935.

The petitioner claims that the respondent became disqualified to continue in office upon the declaration of war between the United States and Germany because he represents an alien enemy estate and cites as an authority for the proposition the Trading with the Enemy Act (Act, § 7, subd. [b]; U. S. Code, tit. 50, Appendix, § 7, subd. [b]) which in effect prohibits the prosecution of any suit or action at law or in equity in any court within the United States by an enemy or ally of enemy prior to the end of the war, except in certain cases not presently applicable.

The respondent questions the authority of the Public Administrator to petition for the revocation of the letters, and further claims the state of war has not affected his status as ancillary administrator.

Section 99 of the Surrogate's Court Act provides that an application for revocation may be made by a " creditor or person interested in the estate of a decedent, or a ward or friend of a ward, or a person beneficially interested in the execution of a trust, or any surety on a bond of a person to whom letters have been granted * * *." It is evident from a reading of that section that the Public Administrator does not come within the group who may institute this proceeding.

Among the grounds stated in section 99 of the Surrogate's Court Act for the revocation of letters of a fiduciary of an estate, is one where the person to whom letters have been granted, thereafter becomes disqualified by law to act (subd. 1).

It has long been established that a resident alien enemy may sue and prosecute an action in our courts during the continuance of war (*Clarke* v. *Morey,* 10 Johns. 69); that a nonresident alien enemy has no such right (*Matter of Weinmann,* 181 Misc. 511; *Ex Parte Colonna,* 314 U. S. 510; *Arndt-Ober* v. *Metropolitan Opera Co.,* 182 App. Div. 513; *Hughes* v. *Techt,* 188 App. Div. 743, affd. 229 N. Y. 222; Huberich on Trading with the Enemy, pp. 191–195); and that if an action were pending at the outbreak of war, all proceedings on the part of the nonresident plaintiff alien enemy may be stayed until peace has been restored (*Rothbarth* v. *Herzfeld,* 179 App. Div. 865, affd. 223 N. Y. 578; *Arndt-Ober* v. *Metropolitan Opera Co., supra; Farenholtz* v. *Meinshausen,* 181 App. Div. 474; *Cohn* v. *Gismond & Co., Inc.,* 203 App. Div. 453, 454; *Nord Deutsche Ins. Co.* v. *J. L. Dudley, Jr., Co.,* 169 N. Y. S. 303, affd. 183 App. Div. 887). For a general discussion of questions arising out of war conditions see 147 American Law Reports, pages 1297–1309.

The general purposes of the Trading with the Enemy Act, so much relied upon by the petitioner, are set forth at length in Huberich on Trading with the Enemy (p. 46 *et seq.*) but are concretely stated in *Weiditschka* v. *Supreme Tent K. M. W.* (188 Iowa 183) as follows (pp. 191–192): " The object is not to defeat the alien enemy of his right to recover whatever may be owed to him, nor to shield the citizen from the enforcement of his just obligations, but to obviate the deriving of any advantage by the enemy, directly or indirectly, pending hostilities. These reasons have persuaded many courts to postpone, rather

than abate, actions begun before the countries were engaged in war."

There seems to be no reported case in this State in which the precise question here involved has been passed upon; but cases are not lacking to sustain the proposition that the continuance in office of the respondent is not violative of the Trading with the Enemy Act and the executive and administrative orders issued pursuant thereto.

In *Propper* v. *Buck* (178 Misc. 76) one of the grounds upon which the defendant sought a stay of proceedings was that although the plaintiff, as receiver, was not an enemy, or an alien, or a nonresident, he was, nevertheless, seeking to enforce an action of a nonresident alien enemy. In denying the application Justice WALTER said: " * * * as the plaintiff here is a receiver acting under appointment of this court and accountable to it, and can make no distribution of any recovery except upon the court's order, I conclude that there is here no such suspension of right to prosecute as gives a legal right to a stay."

In *Weiditschka* v. *Supreme Tent K. M. W.* (188 Iowa 183) it was held that an action brought by an administratrix to enforce a benefit certificate issued to decedent would not be postponed until the termination of the war because of the enemy character of the heirs, inasmuch as the administratrix was under the control of the court, and she could be directed by it to retain the funds for distribution until after the war.

In *Krachanake* v. *Manufacturing Co.* (175 N. C. 435, 439) it was held that the reasons which prevented alien enemies, under certain conditions, from resorting to our courts do not prevail when the subject of recovery will be in charge of a guardian appointed by the court, and cannot be removed from the State without its consent.

These cases are distinguishable from *Matter of Willer* (179 Misc. 169) and *Matter of Weinmann* (181 Misc. 511) cited by the petitioner. In the latter case the designation by an alien enemy of the petitioner to apply for letters was made during the war and it was held by this court that, since the designation was a contract of agency which was suspended by the outbreak of the war and the incapacity of the alien enemy residing in enemy country to institute a proceeding also barred his designee, in the absence of qualified persons entitled thereto, ancillary letters would be issued to the Public Administrator. (See, also, *Matter of Miller,* 181 Misc. 88; *Matter of Gustav H. Kuntzsch,* 114 Misc. 694; *Matter of Cassola,* 183 Misc. 66.)

The ancillary letters in question were issued to the respondent in 1935, when Germany was not at war with the United States, and the power of attorney made by the domiciliary administrator to the respondent was fully recognized by the court. The agency of such designation terminated with the granting of the letters and the qualification by the respondent. He thereupon became not only a representative of an alien estate, but an officer of this court, subject to its orders and directions and the statutes regulating the powers, duties and obligations of an ancillary administrator (Surrogate's Ct. Act, § 166; *Cummings* v. *Banks,* 2 Barb. 602; *Hopper* v. *Hopper,* 125 N. Y. 400, 403; *Smith* v. *Second Nat. Bank,* 169 N. Y. 467, 472; *Heggos* v. *Streeter,* 182 App. Div. 525; *Matter of Roeben,* 171 Misc. 548; *Matter of Gaines,* 83 Hun 225, affd. 154 N. Y. 747).

The respondent is accountable to this court for any assets which may come into his hands. The Alien Property Custodian is a necessary party in any proceeding for the judicial settlement of the account of the representative, and any direction to be made by the court with respect to the distribution of the net assets of the estate authorized by section 164 of the Surrogate's Court Act, must be subject to Executive Orders Nos. 8389 and 9095 (Code of Fed. Reg., Cum. Supp., tit. 3, pp. 645, 1121), and General Orders Nos. 5, 6 and 20 of the Alien Property Custodian (Code of Fed. Reg., Cum. Supp., tit. 8, §§ 503.5, 503.6, 503.20) issued pursuant to the Trading with the Enemy Act, and, in any event, to the provisions of section 269 of the Surrogate's Court Act (as amd. by L. 1939, ch. 343). (See *Matter of Miller, supra; Kaufman* v. *Eisenberg,* 177 Misc. 939; *Groupement Financier Liegois* v. *Cutten,* 178 Misc. 275; *Brown* v. *Morgan & Co., Inc.,* 177 Misc. 763; *Hungarian General Creditbank* v. *Titus,* 182 App. Div. 826.)

The application must, therefore, be denied and the petition dismissed, but without costs.

Submit decree, on notice, accordingly.